Opinion issued December 14, 2017



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-17-00402-CV
_____

**HOUSTON METHODIST WILLOWBROOK HOSPITAL, Appellant**

**V.**

**MARY LOU RAMIREZ, Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1077918**

---

## O P I N I O N

This is an accelerated appeal from the denial of a motion to dismiss a health care liability claim. Mary Lou Ramirez alleges that Houston Methodist Willowbrook Hospital is liable for her personal injuries stemming from her slip and fall inside a hospital building. The hospital contends that Ramirez's sole cause

of action is a health care liability claim, yet she failed to serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351.

The outcome turns on whether Ramirez's cause of action is a health care liability claim. It isn't. We therefore affirm.

## Background

Appellee Mary Lou Ramirez entered Houston Methodist Willowbrook Hospital in order to receive medical care from her primary-care physician, whose office is on the third floor. Ramirez was suffering from shortness of breath and abdominal pain. During her appointment with her physician, Ramirez was "sent down" to the hospital's first-floor radiology department for a chest x-ray.

Ramirez took an elevator to the first floor, exited the elevator near the hospital's entry pavilion, and proceeded alone through the pavilion toward the radiology department. While walking between the elevator and the radiology department, Ramirez alleges that she slipped and fell because the floor was being "buff[ed] . . . without any caution/wet floor sign." After falling, Ramirez went to the emergency room and was later transported by wheelchair back to her physician's office to complete her appointment. Her physician's notes about the fall say only that "Pt fell on her way to xray - sts she slipped on water, she was taken to the er and had xrays."

2

Ramirez sued the hospital, alleging that it "negligently permitted the floor to become slippery," "negligently or willfully allowed such condition to continue," and "negligently or willfully failed to warn" of such a condition. The hospital moved to dismiss. It contended that Ramirez's sole cause of action is a health care liability claim. If so, Ramirez should have served an expert report within 120 days after the hospital filed its answer, which she failed to do. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). After a hearing, the trial court denied the hospital's motion to dismiss. The hospital then initiated this accelerated appeal.

The hospital asserts that Ramirez's cause of action is a health care liability claim under two aspects of that term's statutory definition: either a health care liability claim based on a claimed departure from accepted safety standards or one based on "professional or administrative services directly related to health care." *See id.* § 74.001(a)(13).

**Analysis**

A ruling on a motion to dismiss a health care liability claim pursuant to the Texas Medical Liability Act (TMLA) is generally reviewed for abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). However, we review de novo whether a particular cause of action is a health care liability claim. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014). In doing so, we "consider the entire record, including the pleadings,

3

motions, responses, and relevant evidence properly admitted." *See, e.g.*, *Shah v. Sodexo Servs. of Tex. L.P.*, 492 S.W.3d 413, 416–17 (Tex. App.—Houston [1st Dist.] 2016, no pet.). The party moving for dismissal bears the burden to prove that the cause of action is a health care liability claim. *See Reddy v. Veedell*, 509 S.W.3d 435, 438 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (per curiam).

A health care liability claim consists of three elements: (1) the claim must be asserted against a doctor or health care provider, (2) it must pertain to "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," and (3) the alleged departure must proximately cause injury or death to the claimant. TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). When asserting a health care liability claim, a plaintiff generally must serve an expert report on standard of care, breach, and causation. *Id*. § 74.351(a), (r)(6). If the plaintiff does not timely serve the expert report, then the court must grant a defendant health care provider's motion to dismiss and award reasonable attorneys' fees and court costs. *Id*. § 74.351(b). If the record does not affirmatively show that the plaintiff's claims are health care liability claims, the statutory expert-report requirements do not apply. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015).

The hospital contends that Ramirez's cause of action qualifies as a health care liability claim, either as a "safety" claim or as a "professional or administrative services" claim.

## I.      Safety-claim analysis

Safety claims are governed by the framework announced in *Ross v. St. Luke's Episcopal Hospital*, 462 S.W.3d 496 (Tex. 2015). For a safety-standards-based claim to be considered a health care liability claim, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. The "pivotal" inquiry in such a case is "whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. Seven nonexclusive factors inform this analysis:

1.      Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.      Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3.      At the time of the injury was the claimant in the process of seeking or receiving health care;

4.      At the time of the injury was the claimant providing or assisting in providing health care;

5.      Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* The analysis under these factors, especially the seventh, may involve comparing the allegedly negligent acts or omissions to potentially relevant government regulations. *See, e.g.*, *PHCC—La Hacienda Rehab. & Health Care Ctr. LLC v. Crume*, 492 S.W.3d 797, 801 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A safety-standards-based claim does not come within the TMLA's provisions "just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both." *Ross*, 462 S.W.3d at 503.

The safety standards implicated in this case do not have a substantive nexus with providing health care. Ramirez's cause of action implicates only the hospital's duties as a premises owner. The allegations concern a slippery floor and the failure to remedy or warn about it. The relevant duties lack a substantive nexus with providing health care because they are owed by any business premises owner to those lawfully entering the property—they are not unique to health care providers. *See, e.g.*, *Ross*, 462 S.W.3d at 505; *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 431–33 (Tex. 2015) (per curiam).

6

The hospital invokes various licensing requirements that require it to have a multi-disciplinary safety committee and a safety officer to carry out a safety program,[1] to adopt and enforce rules that address safety, and sanitation requirements in hospitals,[2] and to "provide a sanitary environment to avoid sources and transmission of infections and communicable diseases."[3] It thus contends that the negligence claims are directly tied to its "duty to provide a clean and sanitary environment for its patients, which is a necessary component to the health care it provides."

While cleanliness is undoubtedly important in hospitals, the record does not demonstrate how Ramirez's claims implicate any duties that are specific to health care providers. The most the record supports is that Ramirez slipped and fell in an area between the elevator and the radiology department, with no indication that the area was anything other than a publicly accessible hallway within the hospital. No record evidence suggests that only patients, or even mostly patients, use this hallway while receiving or seeking to receive health care. More is required to establish a "substantive nexus" between the safety standards allegedly violated and providing health care. It was the hospital's burden in the trial court to provide the

---

[1]     *See* TEX. HEALTH & SAFETY CODE § 241.021; 25 TEX. ADMIN. CODE § 133.142.

[2]     *See* TEX. HEALTH & SAFETY CODE § 241.026(a)(3).

[3]     *See* 25 TEX. ADMIN. CODE § 133.41.

7

required proof. *See Reddy*, 509 S.W.3d at 438. The hospital's evidence showed merely that it "owns and controls" the property, "which includes the Radiology Department, that performs both inpatient and outpatient services, located on the [first] floor." The duties the hospital is alleged to have violated are not those "as a health care provider" or "for patient safety" but are instead those owed by a business premises owner generally. *See Ross*, 462 S.W.3d at 505. Ramirez's cause of action is thus not a safety-standards-based health care liability claim.

Applying the *Ross* factors, the hospital's alleged negligence in failing to correct or warn about a slippery floor does relate to the purpose of protecting patients from harm (as well as anybody else walking down the hallway). With the accident happening between the elevator and the entry to the radiology department, the record does not affirmatively demonstrate that Ramirez was "in a place where patients might be during the time they were receiving care" or that "the obligation of the provider to protect persons who require special, medical care was implicated." Ramirez was in the process of seeking health care at the time of her injury, but she was not providing or assisting in providing health care. The record does not reveal that the hospital's alleged negligence was based on any safety standards uniquely arising from professional duties owed as a health care provider. *See Galvan*, 476 S.W.3d at 433. No instrumentality used to provide health care was implicated in the negligence allegations. Finally, although the hospital relies upon

various regulations generally requiring it to maintain a safe environment,[4] courts uniformly have rejected such generalized obligations as insufficient to transform garden-variety premises-liability claims into health care liability claims. *See, e.g.*, *Galvan*, 476 S.W.3d at 431–33; *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 675–76 (Tex. 2015) (per curiam).

In support of its motion to dismiss, the hospital relies on *Phillips v. Jones*, No. 05-15-00005-CV, 2016 WL 80561 (Tex. App.—Dallas Jan. 7, 2016, no pet.) (mem. op.), but that case is distinguishable. Phillips visited a doctor's office for a medical exam, which took place in an exam room. *Phillips*, 2016 WL 80561, at *1. Once the exam was over, "Phillips stepped down from the examination table, slipped, and fell off the step." *Id.* The resulting cause of action was held to be a safety claim. *Id.* at *2–3. The exam room and table in that case were linked to providing health care in ways that the hallway floor here is not:

> A physician's examination room is not a room "accessible by the public." Instead, it is a room accessible by the physician, staff, and patients. . . . The examination table, along with the step used for getting on and off the table, is an "instrumentality" integral to the rendition of medical services in a physician's examination room. . . . [A]n injury occurring in a health care provider's examination room on equipment typically used in providing health care implicates the health care provider's obligation to provide a safe environment for patients.

---

[4] *See* TEX. HEALTH & SAFETY CODE §§ 241.021, 241.026(a)(3); 25 TEX. ADMIN. CODE §§ 133.41, 133.142; 42 C.F.R. §§ 482.41–482.42.

*Id.* at \*2 (citations omitted); *see also Mendez v. Rodriguez*, No. 13-05-228-CV, 2005 WL 2660486, at \*2–3 (Tex. App.—Corpus Christi Oct. 6, 2005, no pet.) (mem. op.) (plaintiff's injury while climbing down from an x-ray exam table was a safety claim). The record does not show that the area where Ramirez was injured is not accessible by the public, that any instrumentality integral to rendering medical services was involved in her injury, or that the area where she was injured implicated an obligation to provide a safe environment particularly for patients. *See Phillips*, 2016 WL 80561, at \*2.

On balance, the *Ross* factors compel the conclusion that Ramirez's slip-and-fall accident, occurring in a publicly accessible hospital hallway while she was arriving at a radiology clinic to obtain an x-ray, is not substantively related to the hospital's provision of medical or health care. To the extent the hospital's motion to dismiss relied on the characterization of Ramirez's allegations as a TMLA "safety claim," it was correctly denied.

## II. Professional-or-administrative-services claim analysis

The hospital also contends that Ramirez's cause of action is a health care liability claim because it implicates "professional or administrative services directly related to health care." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). For purposes of the TMLA, "professional or administrative services" means "those duties or services that a . . . health care provider is required to provide as a

10

condition of maintaining the . . . health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id.* § 74.001(a)(24); *see CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534–35 (Tex. 2016); *CHCA Bayshore, L.P. v. Ramos*, 388 S.W.3d 741, 745 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The hospital provides no authority other than the statute to support its contention that a slip-and-fall accident in a public area of a hospital can qualify as a health care liability claim in the category of "professional or administrative services directly related to health care." It would require an interpretative stretch to characterize a hospital's actions to keep its public areas free from hazards— whether motivated by regulatory compliance, premises-liability risk management, or common courtesy—as a "service" having a professional or administrative character. Yet the statutory definition of "professional or administrative services" is not concerned with the categorization of the type of service so much as it is concerned with whether the "duties or services" are required to be provided as a condition of maintaining a license, accreditation status, or certification. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24).

Even to the extent a hospital must keep its floors clean to maintain a license, accreditation status, or certification, to qualify as a health care liability claim the relevant "duties or services" must be "directly related to health care." *Id.*

11

§ 74.001(a)(13), (24). As applied to this case, the hospital has made no showing that keeping the floor clean between the elevator and the entry to the radiology department was "directly related" to the x-ray that Ramirez sought, in the sense that there was no "uninterrupted, close relationship or link" between maintaining a safe entry to the office and taking an x-ray to facilitate her medical exam. *See CHRISTUS Health Gulf Coast*, 505 S.W.3d at 536. We conclude that, as to the "professional or administrative services" category of health care liability claims, the trial court correctly denied the motion to dismiss.

**Conclusion**

The hospital failed to demonstrate that Ramirez's cause of action is a health care liability claim of either the "safety" or "professional or administrative services" varieties. She therefore was not subject to the TMLA's expert-report requirement, and the trial court correctly denied the motion to dismiss. We affirm.

Michael Massengale
Justice

Panel consists of Justices Higley, Massengale, and Lloyd.