In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00438-CV
_____

SOUTHEAST TEXAS CARDIOLOGY ASSOCIATES, Appellant

V.

DORIS SMITH, INDIVIDUALLY AND AS REPRESENTATIVE OF
THE ESTATE OF GILL SMITH, Appellee

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-201,280

**OPINION**

In this interlocutory appeal, we are asked to decide whether the trial court

erred by denying a health care provider's motion to dismiss the wrongful death and

survival claims of Doris Smith and the Estate of Gill Smith. Doris, individually, and

as representative of the Estate of Gill Smith, sued Southeast Texas Cardiology

Associates (S.E.T. Cardiology) after Gill tripped over a weight scale at S.E.T.

Cardiology's offices, broke his hip, and, over one year later, died. In its appeal,

1

S.E.T. Cardiology argues Doris failed to file an expert report to support her claims as required by the Texas Medical Liability Act ("the Act").[1] Doris, however, argues her claims are premises liability claims, not health care liability claims, and thus not subject to the Act.

We conclude Doris's claims are health care liability claims. As such, they are subject to the expert report requirements of the Act. Because the Act required that Doris file an expert report, we reverse the order denying S.E.T. Cardiology's motion to dismiss. We remand the case to the trial court for an order dismissing the claims against S.E.T. Cardiology with prejudice.[2] On remand, the trial court must conduct a hearing and award S.E.T. Cardiology reasonable attorney's fees and costs.[3]

Background

In March 2016, Gill Smith saw his doctor for a checkup at S.E.T. Cardiology's office in Beaumont. Gill's doctor saw him in one of the rooms S.E.T. Cardiology

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2018) (permitting interlocutory appeals from a trial court's ruling under section 74.351); *id.* § 74.351(a) (West 2017) (requiring plaintiffs who bring health care liability claims to serve all parties with an expert report within 120 days after the health care provider answers the plaintiff's suit).

[2] *See id.* § 74.351(b)(2) (West 2017) (requiring trial courts to dismiss plaintiff's health care liability claims if the plaintiff fails to file a report).

[3] *Id.* § 74.351(b)(1) (West 2017) (requiring the trial court to award the health care provider's reasonable attorney's fees and costs if the report is not timely filed).

2

uses to examine their patients. After the examination, a nurse, employed by S.E.T. Cardiology, escorted Gill from the room toward the door leading to the patient lobby. Just after leaving the examination room, and before entering the patient lobby, Gill tripped over a weight scale positioned just outside the room where he saw his doctor. After Gill fell, Gill's doctor called an ambulance. The ambulance took Gill to the hospital where he underwent a hip surgery due to his fall. On May 12, 2017, Gill died from complications that Doris's petition claims are related to the injuries Gill suffered in his fall.

In February 2018, Doris sued S.E.T. Cardiology for claims arising under the Texas wrongful death and survival statues.[4] In her petition, she alleged S.E.T. Cardiology "negligently permitted the area in question to become hazardous and dangerous, negligently or willfully allowed such condition to continue and negligently or willfully failed to warn [Gill] of the condition of the area in question." In March 2018, S.E.T. Cardiology answered the suit. After S.E.T. Cardiology answered, Doris did not file a report from an expert addressing how S.E.T. Cardiology violated the standard of care that applied to its decision about where to place the weight scale.

---

[4] *Id.* §§ 71.002, 71.021 (West 2008).

In August 2018, and more than 120 days after filing its answer, S.E.T. Cardiology moved to dismiss Doris's suit based on her failure to comply with the expert report requirements in the Act.[5] In its motion, S.E.T. Cardiology argued that while Doris characterized her claims as premises liability claims, they were instead health care liability claims, making them subject to the expert report requirements of the Act.[6] When Doris responded to S.E.T. Cardiology's motion, she argued she was not asserting health care liability claims because her claims implicated only S.E.T. Cardiology's duties as the owner of the premises where Gill fell. Doris claims that Gill's fall is unrelated to his medical treatment. After conducting a hearing on S.E.T. Cardiology's motion to dismiss, the trial court denied its motion.

Standard of Review

Here, the question we must decide is whether Doris's wrongful death and survival claims are subject to the expert report requirements of the Act. Because the claims the Legislature intended to include within the reach of the Act raise questions of statutory construction, the issue is a legal question subject to a *de novo* standard

---

[5] *See id.* § 74.351(a).

[6] *See id.*

4

of review.[7] When determining whether a plaintiff's claim is a health care liability claim subject to the Act, we must "consider the entire record before the trial court and the overall context of the plaintiffs' suit, including the nature of the factual allegations in their pleadings, [the health care provider's] contentions, and the motions to dismiss and responses."[8]

Analysis

Section 74.351 of the Act requires a plaintiff pursuing health care liability claims to serve a timely report from an expert on each of the health care providers the plaintiff sued.[9] The report must contain the expert's opinions "regarding applicable standards of care, the manner in which the care rendered by the . . . health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[10] The report must be filed within a 120-day deadline; if no report is filed within that period, the Act requires the trial court to grant the health care provider's motion and dismiss the health care provider

---

[7] *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012) (explaining that a *de novo* standard applies to the reviewing court's review of the trial court's ruling about whether a claim falls within the umbrella of the Act).

[8] *Loaisiga v. Cerda*, 379 S.W.3d 248, 258-59 (Tex. 2012).

[9] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)

[10] *Id.* § 74.351(r)(6) (West 2017).

from the suit.[11] That said, a plaintiff need not serve the health care provider with an expert report if the claims are not health care liability claims under the Act.[12]

We consider three basic elements in determining whether a plaintiff's claims are health care liability claims:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.[13]

Doris argues she did not file claims falling within the purview of the Act because no substantive nexus exists between the safety standards S.E.T. Cardiology violated and the care that S.E.T. Cardiology provided Gill. Doris suggests that when her case goes to trial, the testimony she plans to elicit from S.E.T. Cardiology's employees and agents "will primarily fall on their general knowledge and observations when monitoring a common pathway used by many persons when

---

[11] *See id.* § 74.351(a), (b).

[12] *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 502 (Tex. 2015) (explaining that "the Legislature did not intend for the expert report requirement to apply to every claim for conduct that occurs in a health care context").

[13] *Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014) (quoting *Tex. W. Oaks Hosp., LP*, 371 S.W.3d at 179-80). *See also* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West 2017).

entering and exiting their office" since S.E.T. Cardiology did not restrict the area solely to its patients. Doris notes that a patient's family members are sometimes allowed to accompany a patient to the room where the examination occurs. She concludes that "[j]ust because [Gill] tripped over a piece of equipment owned by [S.E.T. Cardiology,"] that fact does not make her wrongful death and survival claims health care liability claims.

Claims alleging that a health care provider violated a safety standard are not health care liability claims unless a "substantive nexus [exists] between the safety standards allegedly violated and the provision of health care."[14] To determine whether Doris sued S.E.T. Cardiology on claims classified as health care liability claims, we apply the framework established by the Texas Supreme Court in *Ross v. St. Luke's Episcopal Hospital*.[15] We rely on the definition the Legislature gave to the term "health care" in the Act, which defines "[h]ealth care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."[16] The Act, however, does not define the

---

[14] *Ross*, 462 S.W.3d at 504.

[15] *Id*. at 505.

[16] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (West 2017).

word "safety." The Texas Supreme Court has applied "safety's" commonly understood meaning, which the Court stated is "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'"[17] The *Ross* Court explained that while the line between what does and does not fall within the coverage of the Act is not always clear when the injury is one that could have occurred outside a health facility, "[t]he pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety."[18] In *Ross*, the court held the case fell outside the coverage of the Act because (1) the plaintiff did not fall in an area that was used to treat patients, (2) the hospital's purpose in cleaning and buffing the floor near the exit where the plaintiff fell was not to protect the hospital's patients, (3) the plaintiff did not come to the hospital for medical care, and (4) the plaintiff was not being assisted by any health care providers when she fell.[19]

---

[17] *Williams*, 371 S.W.3d at 184 (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005).

[18] *Ross*, 462 S.W.3d at 505.

[19] *Id.*

To decide whether a plaintiff's personal injury claim that arose from a fall asserted a health care liability claim subject to the Act, the *Ross* Court used these seven factors:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?[20]

Here, the facts before the trial court established that Gill was a patient at S.E.T. Cardiology when, while accompanied by a nurse, he tripped on a scale placed just

---

[20] *Id.*

9

outside the room where he saw his doctor. The record includes an affidavit from S.E.T. Cardiology's office manager, which states that S.E.T. Cardiology uses a scale to weigh patients. Doris does not dispute that the scale was in the hallway just outside the room where the doctor examined Gill. She also does not dispute that S.E.T. Cardiology uses its scale in its business of caring for patients. Here, Gill fell in a location in S.E.T. Cardiology's office generally unavailable to the public.[21] The record also shows a nurse was with Gill when he left the examination room, and he fell before he reached the lobby.

Because Gill was one of S.E.T. Cardiology's patients, and because one of its doctors had just seen Gill, the duties S.E.T. Cardiology owed him are based both on his status as a business invitee *and* his status as a patient. Here, the evidence in the case, if tried, would focus on S.E.T. Cardiology's knowledge about its patients generally as related to the choice it made when it decided where to locate the scale. The evidence likely will also address whether S.E.T. Cardiology's nurses or doctors were aware of any condition that might have impaired a patient's ability to see or walk.

The facts before the trial court also show that the nurses and doctors employed by S.E.T. Cardiology were the individuals who decided where to locate the scale.

---

[21] *Id*. at 499.

10

For example, S.E.T. Cardiology's witness would likely be questioned concerning whether nurses and doctors evaluate a patient's balance when the patient is shown to the room where the patient's examination will occur. Its nurses and doctors would likely be asked whether S.E.T. Cardiology takes any special precautions given that the scale is in an area that is used by patients. For these reasons, we conclude the evidence a jury will be asked to consider will include whether the scale presented an unreasonable risk of harm to S.E.T. Cardiology's patients. Stated another way, the evidence in the trial will require the jury to consider more than just whether the scale presented an ordinary tripping hazard to those invited into its offices.

While most of the factors in *Ross* strongly favor finding that Doris's claims are health care liability claims, not all of them do. For instance, the record contains no evidence showing that government regulations or accrediting agency standards exist to guide a doctor's office about where to locate its scale. And the affidavit of S.E.T. Cardiology's office manager reveals the business has no written standards or formal policies about whether a patient is to be assisted when walking to or from the rooms where patient examinations occur. Nonetheless, the cases Doris relies on in her brief are all distinguishable on their facts, either because of the plaintiff's

11

relationship to the health care provider, or the location where the plaintiff was injured.[22]

Having considered the record, we conclude the trial court erred when it ruled that Doris's wrongful death and survival claims were not health care liability claims. Here, the record shows a substantive nexus exists between the standards at issue and Gill's fall. Since Doris's claims are health care liability claims, Doris needed to file an expert report within 120 days of S.E.T. Cardiology's answer.[23] Because Doris failed to file an expert report when her claims are health care liability claims and

---

[22] Doris relies on the following cases in her brief. *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 431 (Tex. 2015) (rejecting the hospital's argument that a hospital visitor's claim was subject to the Act when "nothing in the record supports the hospital's contention that patients regularly—or even occasionally—traversed the area where [the hospital visitor] fell"); *Houston Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (rejecting the hospital's argument that a patient's claim was subject to the Act where the patient fell on a buffed floor as she walked through a pavilion on her way to be x-rayed); *Lout v. The Methodist Hosp.*, 469 S.W.3d 615 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (reversing and remanding a slip and fall case for further proceedings when the evidence before the trial court failed to show whether the location of the fall was in an area used to treat patients); *Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 Tex. App. LEXIS 9681, at *21 (Tex. App.—Houston [1st Dist.] Aug, 28, 2014, no pet.) (mem. op.) (reversing the trial court's ruling dismissing the plaintiff's claim when the circumstances showed the plaintiff, an employee of the health care facility and not a patient, tripped and fell over an extension cord, which the court concluded made her claim a "garden-variety slip-and-fall claim that is completely untethered from the provision of health care").

[23] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

subject to the Act, we hold the trial court should have granted S.E.T. Cardiology's motion to dismiss.[24]

## Conclusion

On this record, the wrongful death and survival claims that Doris filed have a substantive relationship with the duties S.E.T. Cardiology owed Gill. We conclude her claims are subject to the Act. We reverse the trial court's order denying S.E.T. Cardiology's motion to dismiss. We remand the case to the trial court, with instructions that the trial court dismiss the claims against S.E.T. Cardiology with prejudice.[25] Finally, we instruct the trial court to consider S.E.T. Cardiology's requests for attorney's fees and costs, as required by the Act.[26]

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on March 1, 2019
Opinion Delivered July 11, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[24] *See id.* § 74.351(b).

[25] *See id.* § 74.351(b)(2).

[26] *See id.* § 74.351(b)(1); *Williams*, 371 S.W.3d at 193.

13