**Reversed, Rendered in Part, and Remanded in Part, and Majority and Dissenting Opinions filed March 26, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00887-CV

---

### THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellant

### V.

### BRENDA JACKSON, Appellee

---

### On Appeal from the 122nd District Court
### Galveston County, Texas
### Trial Court Cause No. 17-CV-1226

---

### DISSENTING OPINION

The question before us is whether Brenda Jackson's claim against UTMB is a health care liability claim under the Texas Medical Liability Act. Because Brenda Jackson's claim is not subject to the requirements of the Texas Medical Liability Act, I respectfully dissent from the majority opinion.

The Texas Legislature's stated purpose in enacting the Medical Liability and

Insurance Improvement Act, the precursor to the Texas Medical Liability Act, was to reduce the cost of medical malpractice insurance, thereby increasing patients' access to health care. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02(b)(1)-(5), 1977 Tex. Gen. Laws 2039, 2040 (former Tex. Rev. Civ. Stat. art. 4590i, § 1.02(b)(1)-(5)), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. In 2003, the Medical Liability and Insurance Improvement Act ("MLIIA") was repealed and replaced with the Texas Medical Liability Act ("TMLA"). The statutes are the same in purpose and similar in content. Legislative history of the TMLA reveals that the Legislature intended to amend sections of the MLIIA to address what was perceived to be a "medical malpractice crisis." House Research Org., Bill Analysis, Tex. H.B. 4, 78th Leg., R.S. (2003). Supporters urged that the TMLA "would help ensure access to health care by limiting insurers' exposure to risk. This would lead to a reduction in medical malpractice rates, which would permit more physicians to practice in the state." *Id.*

The majority's opinion is not consistent with the original intent of TMLA and fails to serve the purpose intended by the Legislature. *See generally Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 862–63 (Tex. 2005) (O'Neill, J., dissenting) ("[T]he adoption of an overly broad interpretation of 'health care liability claim' could also hinder the Legislature's goal of ensuring that medical malpractice insurance is available at a reasonable cost: if courts sweep even ordinary negligence claims into the ambit of the MLIIA, then malpractice insurers may end up covering more of those claims. Malpractice insurance rates would then continue to rise as those insurance policies are required to cover claims that were not contemplated under the insurance contracts.").

The TMLA defines a "health care liability claim" as:

> a cause of action against a health care provider for treatment, lack of treatment, or other claimed departure **from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care**, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*See* Tex. Civ. Prac. & Rem. Code § 74. 001(a)(13) (emphasis added).

If a claim against a health care provider alleges a departure from safety standards, it is a health care liability claim only if there is a "substantive nexus between the safety standards allegedly violated and the provision of health care." *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 673–74 (Tex. 2015).

The TMLA does not specifically state that safety standards-based claims fall within its provision only if the claim has some relationship to the provision of health care other than the location of the occurrence, the status of the defendant, or both. *Id.* However, the Texas Supreme Court has concluded that the Legislature must have intended such a relationship is necessary, given the legislative intent explicitly set out in the TMLA and the context in which "safety" is used in the statute. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). For a safety standards-based claim to be considered a health care liability claim subject to the requirement of providing an expert report under the TMLA, there must be a substantive nexus between the safety standards allegedly violated and the provision of health care. *Id.; Se. Tex. Cardiology Assoc. v. Smith*, 09-18-00438-CV, 2019 WL 3022547 at *3 (Tex. App.—Beaumont July 11, 2019, no pet.). "The pivotal issue ... is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Ross*, 462 S.W.3d at 505. The majority and I agree on the "pivotal

3

issue" in this case as articulated in *Ross*; however, this is where we part company. *Id.* at 505.

The high court has created a list of non-exclusive facts to consider when determining whether a claim is substantively related to providing medical or health care by the defendant (and is therefore considered a health care liability claim):

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;

> 4. At the time of the injury was the claimant providing or assisting in providing health care;

> 5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

> 6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

> 7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Ross*, 462 S.W.3d at 505.

While the majority's analysis relies upon the fact that Brenda Jackson was a patient in an area not generally accessible to the public, the majority ignores the other *Ross* factors. *Id.*

The record reflects that Brenda Jackson was at UTMB for a colonoscopy, an outpatient procedure. Jackson was walking in a hallway to a procedure area, which was not generally accessible to the public, when she slipped on liquid, believed to

4

be water, resulting in her injuries. As is in *Ross*, she was not undergoing a procedure or receiving care, she had not yet undergone testing, she was not accompanied by any medical staff, and she was not in an area where patients might be during treatment.

Tellingly, here, as in *Ross*, the record does not reflect that UTMB's vigilance, or lack thereof, regarding the liquid on the floor that caused Jackson's injuries, was for the purpose of protecting patients any more than any other individual who might have been in that area of the hospital.

As the majority notes, a claim may not fall under the TMLA "if the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare [is] the healthcare setting (*i.e.*, the physical location of the conduct in a health care facility)." *Loaisiga v. Cerda*, 379 S.W.3d 248, 257 (Tex. 2012). Walking from one area of the hospital to another does not directly relate to the rendition of health care unless there are accompanying acts of medical treatment or health care, or a departure from safety standards directly related to medical care, which do not exist in this case.

Although UTMB claims that there are federal regulations that require UTMB to meet certain safety standards, including requirements that the "overall hospital environment . . . be developed and maintained in such a manner that the safety and well-being of patients are assured," that diagnostic facilities "be located for the safety of patients," and that hospital facilities "be maintained to ensure an acceptable level of safety and quality." 42 C.F.R. § 482.41 (a), (d)(1), (d)(2), and Joint Commission Standard EC.02.06.01 ("The hospital establishes and maintains a safe, functional environment. Interior spaces meet the needs of the patient populations and are safe and suitable to the care, treatment, and services provided."). UTMB fails to specify how these standards apply to removing liquid

5

from the floor, warning of a dangerous condition, or eliminating a dangerous condition, which UTMB also denies existed at the time of Jackson's fall. UTMB fails to specify any specific requirements that differ from the general obligations of any business that is open to the public. UTMB fails to state how these duties are unique to those of a healthcare provider.

The duties described by UTMB to create a "safe, functional environment" are duties that are owed by all business premises owners, and the location of the diagnostic facilities is not a basis for Jackson's claim. Further, "such generalized obligations are insufficient to transform garden-variety premises-liability claims into health care liability claims." *Houston Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495, 500 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Reddic*, 474 S.W.3d at 675–76).

Brenda Jackson's claim is analogous to the claim of the plaintiff in a case decided by our sister court. *Ramirez*, 539 S.W.3d at 497–98. In *Ramirez*, the plaintiff was sent from a physician's office to a radiology lab when she alleged that she slipped and fell on the floor, which was being buffed. *Id*. at 497. The First Court of Appeals held that Ramirez's claim was not substantively related to the hospital's provision of medical or health care, affirming the trial court's denial of Houston Methodist's motion to dismiss based on failure to comply with the TMLA. *Id*. at 501. As in Jackson's claim, the cause of action alleged by Ramirez were duties owed by a premises owner, not duties unique to a health care provider that would require compliance with the TMLA.

Requiring expert testimony in a premises liability or ordinary negligence case also defeats the purpose of the statute. Expert testimony is not necessary to determine liability in a premises liability or ordinary negligence case. In *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 772 (Tex. App.—Corpus Christi

6

2006, pet. denied), the plaintiff suffered injuries from an accident that occurred while using a treadmill in a treatment facility. The court found that Stradley's claims were "personal injury claims of the most pedestrian nature" and that a "jury could understand the evidentiary issues and negligence standards posed by Stradley's claims without the aid of a medical expert's report." *Id*. at 775–76. The simple fact that Stradley was injured on a treadmill located in a medical wellness center, rather than in some other location did not covert a personal injury claim to a heath care liability claim. The same principle applies here.

In sum, the Legislature did not intend that every negligent injury to a patient would fall under the TMLA. *Marks v. St. Luke's Episcopal Hosp*., 319 S.W.2d 658, 664 (Tex. 2010). The TMLA was created for the specific purpose of disposing of frivolous claims against health care providers, not destroying possibly meritorious causes of action for lack of an unnecessary expert report.

The majority's opinion has the effect of requiring an expert report to demonstrate causation and liability[1] in claims that should not be subject to the TMLA's requirements.

Brenda Jackson's claim is a premises liability cause of action and should not be subject to the TMLA's requirements.


/s/    Margaret "Meg" Poissant
Justice


Panel consists of Justices Wise, Jewell, and Poissant. (Jewell, J., majority).

---

[1] "Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation." Tex. Civ. Prac. & Rem. Code. §74.351(j).