

## NUMBER 13-24-00354-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

DOCTORS HOSPITAL AT
RENAISSANCE, LTD. D/B/A
DHR HEALTH IMAGING
CENTER AT MEDPOINT,                                            Appellant,

v.

BELEN TORRES,                                                   Appellee.

---

## ON APPEAL FROM THE 464TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant Doctors Hospital at Renaissance, Ltd. d/b/a DHR Health Imaging Center

at Medpoint (DHR) appeals from the denial of its motion to dismiss claims brought by

appellee Belen Torres. Torres alleges that DHR is liable for her personal injuries

stemming from her fall from a radiology exam table. In its sole issue, DHR contends that trial court erred in denying its motion to dismiss because Torres's causes of actions are health care liability claims (HCLCs), yet she failed to timely serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351. Because we hold that Torres's claims are HCLCs and Torres failed to timely serve an expert report, the trial court abused its discretion when it denied DHR's motion to dismiss. We therefore reverse and remand.

## I.    BACKGROUND

On February 14, 2022, Torres went to a DHR imaging facility for bilateral knee x-rays. Following the imaging, Torres was being assisted off the radiology exam table by a radiology technologist when she fell to the ground. According to Frank Schroeder, M.D., an expert retained by Torres, she "injured her cervical spine, lumbar spine[,] and right knee as a direct result of the [f]all."

Torres filed her original petition on May 28, 2023, and DHR filed its original answer on August 28, 2023.[1] On October 23, 2023, Torres filed her second amended petition alleging that DHR was negligent and grossly negligent in a number of ways, including:

(1) failing to properly assess [Torres] for her risk of falling and failing to assess her as having a high risk for falling;

(2) failing to properly communicate and take precautions/actions to prevent her from [falling];

(3) failing to have or to fully and properly implement, train and/or enforce policies and procedures to assess for risk of falling and to take precautions and actions to prevent falls including with respect to [Torres];

(4) failing to monitor, to assess and/or to safely and properly move/relocate or transport [Torres] after the radiology procedure.

---

[1] Torres's original petition separately named DHR Health Imaging Center at Medpoint, DHR Health, and Doctor's Hospital at Renaissance, Ltd. as individual defendants.

On December 29, 2023, Torres filed her "Notification of Service of Expert Reports" containing the expert reports and curricula vitae of Yannique Mack, R.N., and Schroeder. According to Mack's report, DHR "provided medical care which fell below the applicable standards of care" because "[t]here was no risk of fall assessment done and documented," "there was no assistance or adjunct tool provided to [Torres] to ensure she did not fall," and the radiology technologist "was not properly trained . . . to prevent the fall."

On January 2, 2024, DHR filed a motion to dismiss for failure to timely file an expert report pursuant to Texas Civil Practice and Remedies Code Section 74.351. *See* TEX. CIV. PRAC. & REM. CODE § 74.351. DHR argued that Torres's claims are HCLCs, and thus the Texas Medical Liability Act (TMLA) required her to serve an expert report no later than the 120th day after its original answer was filed. *See id.* § 74.351(a). Because Torres served her expert reports on the 123rd day, DHR contended Section 74.351 requires dismissal of her suit. Torres filed a response to DHR's motion to dismiss and argued that her claims are not HCLCs because "[a]t the time of the fall, [she] was not under the care and treatment of [DHR]" because "[s]he was done with the procedure and already been told she could leave." Additionally, Torres argued that the expert reports were timely served because a "mutual agreement" extending DHR's deadline to answer implicitly extended the deadline to serve her expert reports. Attached in support of her argument was an email detailing the agreement.

The trial court held a hearing on DHR's motion on June 25, 2024. After argument by the parties, the trial court took the matter under advisement and ultimately signed an order denying DHR's motion to dismiss. This interlocutory appeal followed. *See id.*

3

§ 51.014(a)(9).

## II.    STANDARD OF REVIEW & APPLICABLE LAW

The TMLA strikes "a careful balance between eradicating frivolous claims and preserving meritorious ones." *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008). As a part of this balance, the statute requires a plaintiff asserting a "health care liability claim" to serve an expert report "not later than the 120th day after the date each defendant's original answer is filed." TEX. CIV. PRAC. & REM. CODE § 74.351(a). If a plaintiff does not timely serve the expert report, then the trial court must grant a defendant health care provider's motion to dismiss and award reasonable attorneys' fees and court costs. *Id.* § 74.351(b). This requirement was intended to be a "substantive hurdle for frivolous medical liability suits before litigation gets underway." *Spectrum Healthcare Res., Inc. v. McDaniel*, 306 S.W.3d 249, 253 (Tex. 2010). "If the record does not affirmatively show that the plaintiff's claims are [HCLCs], the statutory expert-report requirements do not apply." *Hou. Methodist Willowbrook Hos. v. Ramirez*, 539 S.W.3d 495, 498 (Tex. App.— Houston [1st Dist.] 2017, no pet.) (citing *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015)).

The TMLA defines a "health care liability claim" as:

> "[A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). The Texas Supreme Court has interpreted this definition to mean that a HCLC has three basic elements:

(1) a physician or health care provider must be a defendant; (2) the claim or

4

claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)). Whether a claim falls under the TMLA is not determined from the form of the plaintiff's pleading, but by the underlying nature of the claim. *St. David's Healthcare P'ship v. Esparza*, 348 S.W.3d 904, 906 (Tex. 2011) (per curiam).

We review a trial court's ruling on a motion to dismiss HCLCs pursuant to the TMLA for abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). However, we review whether a particular cause of action is a HCLC de novo. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014). "We consider the entire record, including the pleadings, motions, responses, and relevant evidence properly admitted." *Shah v. Sodexo Servs. of Tex. L.P.*, 492 S.W.3d 413, 416–17 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "The party moving for dismissal bears the burden to prove that the cause of action is a [HCLC]." *Ramirez*, 539 S.W.3d at 498 (citing *Reddy v. Veedell*, 509 S.W.3d 435, 438 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (per curiam)).

## III. TORRES'S CLAIMS

It is undisputed that DHR is a health care provider under the TMLA because it is a hospital. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A) (defining "health care provider" to include a "health care institution"), (a)(11)(G) (defining "health care institution" to include "a hospital"). Likewise, it is undisputed that Torres is a claimant because she

5

is "seeking . . . recovery of damages," *see id.* § 74.001(a)(2), based upon DHR's alleged negligence. Thus, the dispositive issue is whether "the claim[s] . . . at issue . . . concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *Tex. W. Oaks Hosp.*, 371 S.W.3d at 179–80.

In Torres's response to DHR's motion to dismiss and at the hearing,[2] Torres relied exclusively on the Texas Supreme Court's decision in *Ross* to support her argument that her claims do not fall under the TMLA. 462 S.W.3d at 496. In *Ross*, the Texas Supreme Court explained that a "safety standards-based claim" against a physician or health care provider is a HCLC only if a "substantive nexus" exists between the "safety standards allegedly violated and the provision of health care." *Id.* at 504. "The pivotal issue . . . is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. The court articulated a seven-factor test to assess whether alleged departures from safety standards are indeed HCLCs:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
>
> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
>
> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;
>
> 4. At the time of the injury was the claimant providing or assisting in providing health care;

---

[2] Torres did not file an appellate brief, so we examine her arguments made in her response to DHR's motion to dismiss and at the hearing on said motion.

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*; *see also Collin Creek Assisted Living Ctr. v. Faber*, 671 S.W.3d 879, 889 (Tex. 2023) (explaining that "courts may use *Ross* to evaluate alleged departures from both safety and health care standards, as well as alleged departures from standards for health care providers that implicate safety"). In the underlying case, Torres contended that there is no substantive nexus between the safety standards allegedly violated and the provision of health care. In support, Torres argued that the first five *Ross* factors weigh in her favor.[3] DHR responds on appeal that "the overwhelming majority" of the factors support classification of Torres's claims as HCLCs.

We conclude that a majority of the *Ross* factors are implicated in this case. We begin our analysis by noting that there is a rebuttable presumption Torres's claims are HCLCs because they are made against a health care provider and are based on facts implicating DHR's conduct during the course of Torres's radiology imaging. *See Collin Creek*, 671 S.W.3d at 890; *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). We must next "consider the entire record to identify the set of operative facts underlying the claims that is relevant to the alleged injury." *Collin Creek*, 671 S.W.3d at 889. Here, those facts implicate the condition of the radiology room located in a medical building owned by DHR; the condition of the radiology exam table; DHR staff's policies and procedures for

---

[3] Torres did not address the sixth and seventh factors.

evaluating a patient's fall risk; the radiology technologist's conduct in helping transfer Torres off the exam table; and Torres's status as a patient receiving health care in a medical setting. *See id.*; *Dacbert v. Med. Ctr. Ophthalmology Assocs., L.L.P.*, No. 04-22-00097-CV, 2023 WL 8103192, at *3 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.).

The record shows that Torres fell from a radiology exam table in an area not accessible by the public, that an instrumentality (the table) and a hospital employee (the technologist) integral to rendering medical services were involved, and that the incident occurred in an imaging room which implicated DHR's obligation to provide a safe environment for patients. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) ("[A]n accepted standard of safety is implicated . . . when the unsafe condition or thing, causing injury to the patient, is an inseparable or integral part of the patient's care or treatment."); *Drs. Hosp. at Renaissance, Ltd. v. Corona*, No. 13-25-00360-CV, 2025 WL 3030601, at *3–4 (Tex. App.—Corpus Christi–Edinburg Oct. 30, 2025, no pet.) (mem. op.); *Phillips v. Jones*, No. 05-15-00005-CV, 2016 WL 80561, at *2 (Tex. App.—Dallas Jan. 7, 2016, no pet.) (mem. op.). To the extent Torres argued the procedure was "complete" before the time of the fall, her own expert stated that DHR's conduct fell below the applicable standards of care because "[t]here was no risk of fall assessment done and documented," "there was no assistance or adjunct tool provided to [Torres] to ensure she did not fall," and the radiology technologist "was not properly trained . . . to prevent the fall." These allegations all necessarily involve conduct that DHR should have taken prior to the conclusion of the procedure. *See Phillips*, 2016 WL 80561, at *2 (rejecting claimant's argument that the procedure being complete when she slipped off an exam

8

table meant she was no longer receiving medical services and holding that "an injury occurring in a health care provider's examination room on equipment typically used in providing health care implicates the health care provider's obligation to provide a safe environment for patients"); *see also Mendez v. Rodriguez*, No. 13-05-228-CV, 2005 WL 2660486, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 6, 2005, no pet.) (mem. op.) (holding complaint of health care provider's failure to assist claimant off an x-ray table was a HCLC because it is "self-evident that . . . getting on and off the examination table was an inseparable part of the x-ray process"); *Corona*, 2025 WL 3030601, at *3 (holding a patient falling in locker room after therapy session ended is indirectly related to the provision of health care). Regarding the seventh factor, according to Mack the alleged negligence occurred due to DHR's alleged failure to comply with and implement safety standards for patients at risk for decreased mobility and falls.

Having considered Torres's allegations in light of the non-exclusive *Ross* factors, we conclude that there is a "substantive nexus" between the "safety standards allegedly violated and the provision of health care." *See Ross*, 462 S.W.3d at 504. *Contrast id.* at 499, 505 (no substantive nexus when a visitor slipped on recently buffed floors while exiting hospital), *and Ramirez*, 539 S.W.3d at 497–98, 501 (no substantive nexus when patient slipped on water in a publicly accessible hospital hallway on the way to a radiology clinic), *with Phillips*, 2016 WL 80561, at *3 (substantive nexus when patient slipped and fell off a step next to an examination table in the clinic's exam room), *and Mendez*, 2005 WL 2660486, at *2 (substantive nexus when a patient fell as she climbed off x-ray exam table). As a result, Torres was required to file an expert report in compliance with the TMLA.

9

## IV. TIMELINESS

Having concluded that Torres's claims are HCLCs, we next examine whether she timely served her expert reports pursuant to the TMLA. *See* TEX. CIV. PRAC. & REM CODE § 74.351(a).

As discussed above, Section 74.351(a) requires a plaintiff asserting a HCLC to serve an expert report "not later than the 120th day after the date each defendant's original answer is filed." *Id.* If a plaintiff does not timely serve the expert report, then the trial court must grant a defendant health care provider's motion to dismiss and award reasonable attorneys' fees and court costs. *Id.* § 74.351(b).

It is undisputed that DHR filed its original answer on August 28, 2023, and Torres filed her notification of service of expert reports on December 29, 2023—123 days later. Torres argued that she complied with the 120-day deadline because there was a "mutual agreement" between the parties which extended the deadline for DHR to file its answer. The email from DHR's counsel attached to Torres's response provided the following:

> In follow up to our phone call, our client [DHR] has authorized us to accept service on behalf of the DHR entities. As discussed, [DHR] will consider today, August 9, 2023, as the service date making the answer deadline Monday, September 4, 2023.

In the trial court, Torres argued that, per this agreement, the 120-day deadline started on September 4 and thus service of her expert reports on December 26 was timely.[4]

We disagree with Torres's characterization of the email as a "mutual agreement" which extended DHR's deadline to answer and her deadline to file her expert reports. Instead, the email only expresses DHR's agreement to accept service on behalf of the

---

[4] At the hearing, the trial court asked Torres whether there was any caselaw supporting her position that the agreement to extend the answer deadline also extended her Section 74.351(a) deadline. Torres's trial counsel responded, "[N]o, there is not."

10

other DHR entities on August 9, and accordingly, calculates the deadline to file an answer. In any event, Torres's argument contravenes the clear statutory language in Section 74.351(a) because the fact remains that DHR's original answer was filed on August 28. *See id.* § 74.351(a) (stating an expert report must be served "not later than the 120th day after the date each defendant's *original answer is filed*" (emphasis added)). While Section 74.351(a) does permit parties to extend the expert report deadline by written agreement, *id.*, the Texas Supreme Court has held "that an agreement of the parties that is intended to extend the statutorily mandated 120-day expert report deadline must *explicitly* state that the agreement is for that purpose." *Spectrum Healthcare*, 306 S.W.3d at 250 (emphasis added); *see also Sprott v. Boyd*, No. 09-24-00258-CV, 2025 WL 2164867, at *3, *8 (Tex. App.—Beaumont July 31, 2025, no pet.) (holding a Rule 11 agreement did not extend the 120-day deadline because it was limited to an extension for interrogatories and requests for production). The email manifests DHR's agreement to accept service for the DHR entities and answer by September 4 but makes no mention of the expert report deadline under Section 74.351. Based on the agreement and disregarding Torres's unexpressed subjective intent, we hold that the agreement did not extend the 120-day deadline for Torres to serve her reports absent language manifesting such an intent. *See Sprott*, 2025 WL 2164867, at *8; *see also Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 561–62 (noting courts will not give a Rule 11 agreement greater effect than the parties intended).

Since Torres failed to timely serve her expert reports under Section 74.351, the trial court had no discretion but to dismiss her claims against DHR. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b); *Collin Creek*, 671 S.W.3d at 885. We sustain DHR's sole

issue.

## V.    CONCLUSION

We reverse and remand the case to the trial court with directions to dismiss with prejudice the claims filed by Torres and to award DHR reasonable attorney's fees and costs of court. *See* TEX. CIV. PRAC. & REM CODE § 74.351(b).

L. ARON PEÑA JR.
Justice

Delivered and filed on the
21st day of May, 2026.