

**THE SUPREME COURT OF TEXAS**
Post Office Box 12248
Austin, Texas 78711

(512) 463-1312

Friday, October 30, 2015

Mr. Russell G. Thornton
Thiebaud Remington Thornton Bailey LLP
Two Energy Square
4849 Greenville Avenue, Suite 1150
Dallas, TX 75206
* DELIVERED VIA E-MAIL *

Ms. Marisa M. Schouten
Martin Walker, P.C.
The Arcadia Theater
121 N. Spring Avenue
Tyler, TX 75702
* DELIVERED VIA E-MAIL *

RE:    Case Number: 14-0333
       Court of Appeals Number: 12-13-00107-CV
       Trial Court Number: 12-0060

Style:  LOUISA D. REDDIC
       v.
       EAST TEXAS MEDICAL CENTER REGIONAL HEALTH CARE SYSTEM,
       INDIVIDUALLY AND D/B/A EAST TEXAS MEDICAL CENTER-CROCKETT, INC.

*(stamp: FILED IN COURT OF APPEALS 12th Court of Appeals District — NOV 03 2015 — TYLER TEXAS — PAM ESTES, CLERK)*

Dear Counsel:

Today the Supreme Court of Texas issued an opinion(s) and judgment in the above-referenced cause. You may obtain a copy of the opinion(s) and judgment through Case Search on our Court's webpage at: http://www.txcourts.gov/supreme.aspx. On the Case Search page simply enter the case number and push the Search button to find the docket page for your case.

Sincerely,

Blake A. Hawthorne, Clerk

by Monica Zamarripa, Deputy Clerk

cc:    Ms. Carolyn Rains
       Ms. Cathy S. Lusk (DELIVERED VIA E-MAIL)

# IN THE SUPREME COURT OF TEXAS

No. 14-0333

FILED IN COURT OF APPEALS
12th Court of Appeals District

NOV 03 2015

TYLER TEXAS
PAM ESTES, CLERK

LOUISA D. REDDIC, PETITIONER,

v.

EAST TEXAS MEDICAL CENTER REGIONAL HEALTH CARE SYSTEM,
INDIVIDUALLY AND D/B/A EAST TEXAS MEDICAL CENTER-CROCKETT, INC.,
RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

**PER CURIAM**

This case involves a claim against a hospital by a visitor who fell in the hospital lobby. The question is whether it is a health care liability claim under the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ch. 74. We conclude it is not, because the record does not demonstrate a substantive relationship between the safety standards the visitor alleged the hospital breached and the provision of health care. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

Louisa Reddic, a visitor at East Texas Medical Center-Crockett Hospital, fell when she slipped on a floor mat between the hospital's main entrance and the front desk. Reddic sued the hospital on a premises liability theory. The hospital responded, in part, by filing a motion to dismiss in which it asserted that Reddic's claim was a health care liability claim (HCLC) under the Texas

Medical Liability Act (the Act),[1] and she did not serve an expert report as is required by the Act. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b) (requiring dismissal of an HCLC if a claimant fails to timely serve an expert report).

In moving for dismissal, the hospital primarily relied on *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171, 186 (Tex. 2012). In that case, we held that when a safety standards-based claim is made against a health care provider, the Act does not require the standards underlying the claim to be directly related to the provision of health care in order for the claim to be an HCLC. The hospital urged that because Reddic claimed that the hospital departed from standards of safety, her claim was an HCLC. The trial court denied the hospital's motion, but the court of appeals reversed. *E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, 426 S.W.3d 343 (Tex. App.—Tyler 2014). It concluded that "the care of the floor around an area frequented by numerous patients throughout the day has an indirect relationship to the provision of health care that is sufficient to satisfy the safety prong of the [Act]." *Id.* at 348.

After the court of appeals issued its opinion, we addressed a factually similar matter in *Ross v. St. Luke's Episcopal Hospital*, 462 S.W.3d 496 (Tex. 2015). In that case, Lezlea Ross accompanied a friend who was visiting a patient in St. Luke's Hospital. Ross slipped and fell in the

---

[1] Under the Act, a health care liability claim is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

2

lobby near the hospital exit doors and sued the hospital on a premises liability theory. *Id.* at 499. The hospital moved for dismissal because Ross did not serve an expert report in accordance with the Act's requirements. The trial court granted the motion and the court of appeals affirmed. *Id.* We reversed, concluding that a safety standards-based claim against a health care provider is an HCLC only if a "substantive nexus" exists between the "safety standards allegedly violated and the provision of health care." *Id.* at 504. We set out several non-exclusive considerations for analyzing whether a safety standards-based claim is an HCLC:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
3. At the time of the injury was the claimant in the process of seeking or receiving health care;
4. At the time of the injury was the claimant providing or assisting in providing health care;
5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or
7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505. We concluded that under the record before us, the answer as to each of the considerations was "no," thus Ross's claim was based on safety standards that had no substantive relationship to the provision of health care and it was not an HCLC. *Id.*

Reddic argues that the facts underlying her claim are similar to those in *Ross*, her claim does not have a substantive relationship with the provision of health care just as Ross's claim did not, and the result should be the same. She also asserts that if her claim is held to be an HCLC, then dismissing it violates the Texas Constitution's open courts and special laws provisions. *See* TEX. CONST. art. I, § 13; *id.* art. III, § 56(a)(28).

The hospital responds that *Ross* is inapplicable to this case, but that even if it does apply, Reddic's claim is nevertheless an HCLC. Because maintenance of the hospital's premises is subject to regulations focused on the safety of both patients and others, the hospital reasons, maintenance of the premises is substantively related to the provision of health care.

In support of its position that *Ross* does not apply here, the hospital points out that the hospital in *Ross* did not assert that the area where Ross fell was a patient care area, nor did it claim that the area where Ross fell had to meet particular maintenance standards related to the provision of health care. The hospital posits that three cases other than *Ross*—*Loaisiga v. Cerda*, 379 S.W.3d 248 (Tex. 2012); *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012); and *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525 (Tex. 2011)—should control here. We disagree. None of the cases the hospital references involved the question presented both in *Ross* and here: whether a non-patient's claim for a hospital's violation of premises-related safety standards is an HCLC. *See Loaisiga*, 379 S.W.3d at 257 (considering whether a patient's claim against her health care provider for an alleged assault during the course of treatment was an HCLC); *Williams*, 371 S.W.3d at 186 (concluding that claims for injuries to a health care provider's employee arising from his altercation with a patient were HCLCs because they were for departures from health care

4

standards as well as safety standards); *Ollie*, 342 S.W.3d at 527 (concluding that a patient's claims against a hospital based on her slipping and falling after taking a bath were directly related to health care). So we will look to *Ross* for guidance.

Having anticipated that *Ross* might apply, the hospital sets out four *Ross* factors that it says mandate classifying Reddic's claim as an HCLC: (1) the hospital's alleged negligence was related to protecting patients from harm, (2) the injury occurred in a location where patients might be, (3) the alleged negligence is based on safety standards arising from professional duties owed by the hospital as a health care provider, and (4) the alleged negligence occurred in connection with a failure "to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies." We disagree that the record supports the hospital's position.

In arguing the applicability of the first two factors it references, the hospital urges that Reddic's injury occurred in a location where patients would be, or at least might be, because "[o]ne cannot dispute patients seeking care at [the hospital] will not only be in the hospital lobby, [but] they will also be in the area of the front desk." The court of appeals concluded that "care of the floor around an area frequented by numerous patients throughout the day has an indirect relationship to the provision of health care." *Reddic*, 426 S.W.3d at 348.

We agree that floor care in an area frequented by persons seeking or receiving health care is related to the provision of health care. But as we determined in *Ross*, the Act requires that for a claim to be an HCLC, it must have more of a relationship to the provision of health care than that it arises from an occurrence inside a hospital. 462 S.W.3d at 504. In that regard, this record does

5

not support the court of appeals' statement that numerous patients frequented the area where Reddic fell. Nor does it support the hospital's argument that patients might be in that area while receiving care, thus implicating the obligation of the hospital "to protect persons who require special, medical care." *See id.* at 505.

As to the last two *Ross* factors the hospital references, the hospital's assertions are essentially that the facts Reddic relies on *could* support a claim based on safety standards imposed on the hospital by applicable federal and state authorities and accrediting agencies, so her negligence claim is substantively related to the provision of health care. The hospital points to multiple regulations in support of its argument. First, it says that under federal regulations, hospitals participating in Medicare must meet certain general safety requirements including requirements that the hospital must be "maintained to ensure the safety of the patient," and "[f]acilites . . . must be maintained to ensure an acceptable level of safety." 42 C.F.R. §§ 482.1, .41, .41(c)(2). The hospital also points to requirements in the standards of The Joint Commission—an independent organization that accredits and certifies health care organizations. Under the standards the hospital references, hospitals are evaluated on whether they have a written plan for managing both the "environmental safety of patients and everyone else who enters the hospital's facilities," and "security of everyone who enters the hospital's facilities." JOINT COMM'N STANDARDS EC.01.01.01. Hospitals are also evaluated for whether they identify "safety and security risks associated with the environment of care that could affect patients, staff and other people coming to the hospital's facilities," whether they "take[] action to minimize or eliminate identified safety and security risks in the physical environment," and whether they "maintain[] all grounds." *Id.* at EC.02.01.01. Finally, the hospital

notes that Texas requires hospitals to be licensed by the Department of State Health Services, Tex. Health & Safety Code § 241.021, and the State requires a licensed hospital to have a multi-disciplinary safety committee and a safety officer to carry out a safety program. 25 Tex. Admin. Code § 133.142.

While the hospital lists requirements of various entities with which it must comply and urges that the factor regarding complying or failing to comply with requirements is met, the record does not show that the hospital's complying or failing to comply with them had a substantive relationship to the safety standards underlying Reddic's claim. For example, the hospital references state administrative requirements that it must have a multi-disciplinary safety committee and a safety officer, and Joint Commission standards that it must have a written plan for managing safety and security of both patients and other persons who enter the hospital. But Reddic's claim is for the hospital's failing to properly inspect and maintain its floor mats in the lobby, regardless of whether it had a safety committee, a written plan for managing safety, or a safety officer.

As for general safety standards such as federal regulations requiring hospitals to maintain facilities "to ensure an acceptable level of safety," 42 C.F.R. § 482.41(c)(2), we noted in *Ross* that hospital standards for floor maintenance "may also be the same standards many businesses generally have for maintaining their floors." 462 S.W.3d at 503. We said that "[t]he pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. Although hospitals are required by regulation to ensure an acceptable level of safety for those within its confines, the record does not show that the safety standards at issue here are related to the

7

provision of health care by more than the location of Reddic's fall being inside a hospital. That is, the record does not support a conclusion that safety standards regarding maintenance of the floor and mats where Reddic fell were substantively related to the safety of patients receiving health care or persons seeking health care.

Citing *Denton Regional Medical Center v. LaCroix*, 947 S.W.2d 941, 951 (Tex. App.—Fort Worth 1997, pet. denied), the hospital argues that regulations provide evidence of the standard of care applicable to hospitals. While we do not necessarily disagree with the proposition that applicable regulations in some instances might bear on or evidence a standard of care, we note that the court in *LaCroix* was addressing whether expert testimony was required to establish the hospital's standard of care. *Id.* at 950-51. In doing so, it said that regulations or a hospital's internal policies may be considered in establishing the standard of care. *Id.* at 951. But in the case before us, the hospital does not identify a commission or agency regulation that it says evidences a particular standard of care that both is substantively related to the provision of health care and underlies Reddic's claim. *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) (noting that whether a claim is an HCLC depends on the underlying nature of the claim); *Baylor All Saints Med. Ctr. v. Martin*, 340 S.W.3d 529, 534-35 (Tex. App.—Fort Worth 2011, no pet.) (holding that an expert report did not establish the standard of care where the expert stated that Joint Commission regulations required policies to safeguard patients but did not identify any such policies).

We conclude that the record before us does not reflect a substantive nexus between the safety standards Reddic claims the hospital violated and the hospital's provision of health care. *See Ross*, 462 S.W.3d at 504 (stating that the fact that a visitor to the hospital would not have been injured but

8

for her falling inside the hospital is not a sufficient relationship between safety standards allegedly violated by the hospital and the hospital's health care activities for the claim to be an HCLC). Thus, the record does not support the hospital's contention that Reddic's claim is an HCLC. We need not and do not address Reddic's challenge to the constitutionality of the Act.

We grant the petition for review. Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

**OPINION DELIVERED:** October 30, 2015

# IN THE SUPREME COURT OF TEXAS

No. 14-0333



FILED IN COURT OF APPEALS
12th Court of Appeals District

NOV 03 2015

TYLER TEXAS
PAM ESTES, CLERK

LOUISA D. REDDIC, PETITIONER,

v.

EAST TEXAS MEDICAL CENTER REGIONAL HEALTH CARE SYSTEM, INDIVIDUALLY AND D/B/A EAST TEXAS MEDICAL CENTER-CROCKETT, INC., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

## JUDGMENT

THE SUPREME COURT OF TEXAS, having heard this case on petition for review from the Court of Appeals for the Twelfth District, and having considered the appellate record and counsels' briefs, but without hearing oral argument under Texas Rule of Appellate Procedure 59.1, concludes that the court of appeals' judgment should be reversed.

IT IS THEREFORE ORDERED, in accordance with this Court's opinion, that:

1) The court of appeals' judgment is reversed;

2) The case is remanded to the trial court for further proceedings consistent with this Court's opinion; and

3) Louisa D. Reddic shall recover, and East Texas Medical Center Regional Health Care System, Individually and d/b/a East Texas

Medical Center-Crockett, Inc. shall pay, the costs incurred in this court.

Copies of this Court's judgment and opinion are certified to the Court of Appeals for the Twelfth District and to the 349th District Court of Houston County, Texas, for observance.

Opinion of the Court Delivered Per Curiam.

October 30, 2015

\*\*\*\*\*\*\*\*

2