**Opinion issued April 19, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-15-00854-CV

—————————————

**PHCC—LA HACIENDA REHABILITATION AND HEALTH CARE CENTER LLC, Appellant**

**V.**

**KEITH CRUME, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-08221**

---

## O P I N I O N

This interlocutory appeal presents the question of whether an employee's worker's compensation claim for an injury sustained while repairing a microwave at a nursing home is a "health care liability claim" for the purposes of the Texas Medical Liability Act. The nursing home appeals from the trial court's denial of its

motion to dismiss the claim, which it contends is a "health care liability claim" requiring an expert report. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.001(13), 74.351. We conclude that there was no substantive relationship between the safety standards the employee alleged were breached and the provision of health care. We affirm the trial court's denial of the motion to dismiss.

## Background

La Hacienda is a nursing home in Harris County, operated by PHCC—La Hacienda Rehabilitation and Health Care Center LLC. Keith Crume alleged that during "the course and scope of his employment" with La Hacienda, he received an electric shock "while working to repair a microwave," which caused "severe, permanent and disfiguring injuries."[1] Crume filed suit, alleging negligence and asserting that La Hacienda: (1) failed to provide a safe workplace; (2) failed to provide adequate safety policies and practices; (3) failed to follow adequate safety policies and practices; (4) failed to provide proper assistance and training; (5) failed to provide adequate safety equipment; (6) failed to provide properly trained supervisors; (7) required Crume to work under these unsafe conditions; and (8) was generally negligent.

---

[1] As correctly observed by the trial court judge, Crume specifically alleged that he was "electrocuted," but properly understood that term connotes death resulting from an electric shock. *See, e.g.*, MERRIAM WEBSTER, *Electrocute*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 371 (10th ed. 1993). It is apparent from the appellate record that Crume alleged serious injury, but not death, resulting from the incident.

2

La Hacienda filed a motion to dismiss the case on the basis that Crume's claims were "health care liability claims," and he had not filed an expert report as required by the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(13). In support of its motion, La Hacienda claimed that it had a duty as a health care provider to provide food and nutrition to its patients, and that the microwave is a key piece of equipment used to fulfill these duties. The motion relied on several statutes and administrative requirements that mention microwaved foods. La Hacienda specifically relied on the Texas Administrative Code and the Code of Federal Regulations, both of which require that food be prepared "at the proper temperature" and that the facility "store, prepare, and serve food under sanitary conditions." *See* 42 C.F.R. § 483.35 (2015); 40 TEX. ADMIN. CODE §§ 19.1101, 19.1108, 19.1111.

At the hearing on the motion to dismiss, the trial court asked counsel for La Hacienda:

| | |
|---|---|
| Court: | What kind of experts do we get, a foodborne illness-type expert? |
| La Hacienda: | A safety standards expert, Your Honor, on what safety standards needed have arguably been met. |
| Court: | I thought we had talk about the Plaintiff's injury and all that. So you think that he should have gotten an electrical expert of some kind? |

La Hacienda:        Yes, Your Honor, and probably also an expert on his injuries.

The trial court denied the motion to dismiss the case. La Hacienda appealed.

## Analysis

In its sole issue on appeal, La Hacienda argues that the trial court erred by denying its motion to dismiss Crume's suit for failure to file an expert report.

Under the Texas Medical Liability Act, a health care liability claim (or "HCLC") consists of three elements: (1) the claim must be asserted against a doctor or health care provider, (2) it must pertain to "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," and (3) the alleged departure must proximately cause injury or death to a claimant. TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). If this statutory standard applies to a claim, then the claimant must file an expert report which "provides a fair summary of the expert's opinions" about standard of care, breach, and causation. *Id.* § 74.351(a), (r)(6). The expert report must be served within 120 days of the filing of the defendant's answer. *Id.* § 74.351(a). If an expert report has not been timely filed, the court must grant a defendant health care provider's motion to dismiss and award reasonable attorney's fees and costs of court. *Id.* § 74.351(b).

The central issue in this appeal is whether Crume's claims qualified as "health care liability claims." The Supreme Court of Texas has provided guidance

4

about the second element of a health care liability claim in the context of a claimed departure from standards of safety. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015); *see also Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 430–33 (Tex. 2015); *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 673–76 (Tex. 2015). The Supreme Court held that "for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. The Court explained that the "pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. The Court set out seven nonexclusive factors for courts to consider when determining whether a claim is related to the defendant's provision of health care:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*

We generally review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion. *See, e.g.*, *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). However, when the question is whether the claim is a health care liability claim, we use a de novo standard of review. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014). We consider the entire record, including the pleadings, motions, responses, and relevant evidence properly admitted. *Cage v. Methodist Hosp.*, 470 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] July 9, 2015, no pet.). If the record does not affirmatively show that the plaintiff's claims are health care liability claims, the statutory expert report requirements do not apply. *See Ross*, 462 S.W.3d at 505.

La Hacienda admits that the claims in this case do not meet several of the factors listed above. Crume was not a patient, and the injuries did not occur in a location where patients would be treated. However, La Hacienda argues that because the microwave was necessary for safe food preparation for its patients,

(1) the alleged negligence was based on safety standards arising from its professional duties, and (2) the negligence occurred in the course of its actions necessary to comply with safety-related requirements for health care providers.

In the trial court, La Hacienda argued that the Texas Administrative Code and Code of Federal Regulations require that a facility provide "food that is palatable, attractive, and at the proper temperature" and that the facility "store, prepare and serve food under sanitary conditions." 42 C.F.R. § 483.35 (2015); 40 TEX. ADMIN. CODE §§ 19.1101, 19.1108, 19.1111. La Hacienda also relied upon a State Operations Manual, which it claimed clarified the state and federal regulations and showed that use of a microwave was needed to meet these regulatory directives. It noted that the manual specifically mentioned microwaving foods in the context of both thawing and cooking food to avoid foodborne illnesses.[2]

La Hacienda's argument establishes that a microwave may be related to health care, but it fails to provide any significant link between the use of the microwave to provide health care and the repair process that injured Crume. The

---

[2] While these regulations establish that a microwave may be used in the process of providing dietary services, they do not require its use. The State Operations Manual describes alternative methods to safely thaw frozen foods, including "completely submerging the item under cold water that is running" and "thawing in the refrigerator." La Hacienda's argument that the microwave was "necessary" for its provision of dietary services to comply with the regulations is thus inaccurate.

7

key question when determining whether a claim is a health care liability claim is whether "the standards on which the claim is based implicate the defendant's duties as a health care provider." *Ross*, 462 S.W.3d at 505; *see also Reddic*, 474 S.W.3d at 676. The mere facts that the microwave was located in a health care facility and used to prepare food for patients are not sufficient to establish a nexus between his claim and the facility's provision of health care. *See Reddic*, 474 S.W.3d at 675 (for a claim to be a health care liability claim, "it must have more of a relationship to the provision of health care than that it arises from an occurrence inside a hospital").

Crume did not claim that La Hacienda violated the safety standards for food preparation, but instead he asserted negligent supervision, training, and safety practices for its employees when repairing electrical equipment. The safety standards that Crume claims La Hacienda violated have at most an extremely attenuated connection with the food-preparation requirements which La Hacienda proposes as the basis for designating Crume's claims as health care liability claims. La Hacienda's argument to the trial court during the hearing on its motion confirmed this, as it suggested the necessary expert reports would come from electrical experts or someone familiar with Crume's injuries, rather than someone familiar with health care standards for dietary services. La Hacienda has not

established any "substantive nexus between the gravamen" of Crume's claim in this case and its provision of health care. *Galvan*, 476 S.W.3d at 432.

## Conclusion

We conclude that there is no substantive nexus between Crume's claim and La Hacienda's provision of health care. *See Reddic*, 474 S.W.3d at 676. Therefore, the record does not support La Hacienda's contention that Crume's claim is a health care liability claim, and he was not required to file an expert report in compliance with the Texas Medical Liability Act. We hold that the trial court did not err by denying La Hacienda's motion to dismiss. We overrule La Hacienda's sole issue.

We affirm the order of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.