**AFFIRMED and Opinion Filed December 30, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00406-CV**

**NEXION HEALTH MANAGEMENT, INC. AND NEXION HEALTH AT LUMBERTON, INC., Appellants**
**V.**
**CAROLYN AND DAVID WADDELL, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-11781**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Pedersen, III, and Justice Evans
Opinion by Justice Evans

Appellants Nexion Health Management, Inc. and Nexion Health at Lumberton, Inc. (collectively, "Nexion") appeal the trial court orders denying their motions to dismiss. In two issues, Nexion alleges that (1) the trial court abused its discretion by denying the motions to dismiss because the Texas Medical Liability Act ("TMLA") applies in this case and (2) appellees Carolyn and David Waddills' expert report was deficient. We affirm.

# BACKGROUND

On December 24, 2018, Carolyn slipped on a puddle of water and injured herself while visiting her mother (Lois Chance), a resident at a long-term care facility called Village Creek Rehabilitation and Nursing Center. Specifically, Carolyn alleged that during her visit "she walked down the hall from her [mother's] room to the nurses' station. As she walked down the hallway, she slipped in a puddle of water that had accumulated on the floor."

On August 13, 2019, Carolyn and David filed a lawsuit against Nexion— as the owner and operator of Village Creek Rehabilitation and Nursing Center— alleging claims of premises liability and negligence. Nexion filed an answer and plead "all defenses set forth in Chapter 74 of the Texas Civil Practice and Remedies Code, including, but not limited to §§ 74.301 and 74.303." Carolyn and David filed a motion for partial summary judgment "to show the provisions of Chapter 74 of the Texas Civil Practice & Remedies Code do not apply to this action." In their pleadings, Carolyn and David further alleged:

> Texas's medical malpractice statute requires the Plaintiff in a med-mal case to serve an expert report within 120 days of the Defendant's answer. This is not a med-mal case because the Victim is not a patient, the injury did not involve medical care, and the wrongful actions by Defendants do not arise from medical services. *Nevertheless, in an abundance of caution, Plaintiffs obtained an expert report before filing the lawsuit and served that report on Defendant within the time required.*

–2–

(emphasis added). Nexion filed objections to their expert report and a motion to dismiss alleging the claims should be dismissed because the expert report did not meet the requirements of the statute. On March 5, 2020, the trial court held a hearing on Nexion's objections to the expert report and the motion to dismiss. At the hearing, the trial court noted that it was familiar with the Texas Supreme Court case law on point, stating "I am familiar with *Ross*. It's very simple. It seems to be very analogous to this case."[1] The trial court denied the motion "[b]ased upon the pleadings, argument of counsel, all other matters of record, and the applicable law." The trial court stated that it was "of the opinion that said objections are not meritorious and are in all things DENIED." Nexion then filed this interlocutory appeal.

## ANALYSIS

### A. TMLA

In its first issue, Nexion alleges that the trial court abused its discretion by denying its motions to dismiss.

### 1) Standard of review

Generally, an appellate court reviews a trial judge's decision on a motion to dismiss a claim under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d

---

[1] *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015).

51, 55 (Tex. App.—Dallas 2008, pet. denied). However, when the resolution of an issue on appeal requires interpretation of a statute, the reviewing standard is de novo. *Id.* Therefore, we review de novo the determination of whether a claim is a health care liability claim for the purpose of applying chapter 74 of the Texas Civil Practice and Remedies Code. *Id.*

### 2) Application of *Ross* factors

A cause of action constitutes a health care liability claim if it is a cause of action "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant . . . ." *See* TEX. CIV. PRAC. & REM. CODE §74.001(a)(13). The Texas Supreme Court has explicitly held that for a safety-standards claim to be a health care liability claim, there "must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). The Texas Supreme Court listed seven factors to consider when analyzing whether a claim is substantively related to the defendant's providing of medical or health care and is therefore a health care liability claim:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

–4–

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505. When we examine these factors or considerations, we focus on the essence of the cause of action. *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *13 (Tex. App.—Houston [1st Dist.] Nov. 19. 2020, no pet. h.). For example, is the claim an ordinary negligence claim or is the claim a health care liability claim as contemplated by the Legislature when it provided for health care liability claims in the TMLA? *Id.* The pivotal issue is whether the safety standards implicated Nexion's duties as a health care provider. *Ross*, 462 S.W.3d at 505.

On three separate occasions, the Texas Supreme Court has held that a claim based on a slip and fall in a hospital does not create a substantive relationship between the safety standards the visitor alleges the hospital breached and the

–5–

provision of health care and, thus, cannot constitute health care liability claims. *See Ross*, 462 S.W.3d at 505; *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429 (Tex. 2015); and *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672 (Tex. 2015). Despite this precedent, Nexion asserts in this case the "largely uncontroverted evidence weighs heavily in favor of classification as an [health care liability claim]." Accordingly, we analyze each of the *Ross* factors below.[2]

**i)** ***Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm?***

In the petition, Carolyn and David assert as follows:

During Mrs. Waddell's visit with her mother, she walked down the hall from her room to the nurses' station. As she walked down the hallway, she slipped in a large puddle of water that had accumulated on the floor. Mrs. Waddell did not see the puddle prior to slipping because the floors were shiny and waxy and the puddle was clear. The puddle had formed at the base of a large ice-chest cooler. Apparently, the cooler had been leaking for quite a while; after slipping, Mrs. Waddell realized that the water extended nearly all the way across the hallway.

The sole task at issue in this case was Nexion's maintenance of the floors. Nexion asserts that the "Fall Prevention Procedure Manual for Long-Term Care applies both to the resident rooms and the hallway in which Mrs. Waddell fell." Nexion further asserts that at its facility "many of the patients are frail and could be seriously injured

---

[2] Nexion first asserts that *Reddic, Galvan and Ross* all suffered the same fatal flaw which this case does not: "a lack of *any* evidence to support the contention that patients frequented the area" where the accident occurred. As this issue is addressed in our analysis of the *Ross* factors below, we need not address this issue separately.

by a fall. As such, the standard of care for a nursing and rehabilitation facility such as Village Creek is that the hallways and the walkways utilized by patients and guests remain free of slip, trip and fall hazards." Here, however, Nexion admits that maintaining the hallways is not exclusively for the benefits of its patients, but also for its guests. Thus, Nexion's duties to maintain its floors were no different from any other business owner. *See Ross*, 462 S.W.3d at 499 (non-patient slipped in hospital where floor were being cleaned and buffed not a health care liability claim); *Galvan*, 476 S.W.3d at 429-30 (non-patient slipped on water on hospital floor); *Reddic*, 474 S.W.3d at 673-74 (non-patient slipped on floor mat in hospital); *see generally Strunk v. Belt Line Rd. Realty Co.*, 225 S.W.3d 91, 100 (Tex. App.—El Paso 2005, no pet.) (truck driver slipping in puddle with algae on driveway raised some evidence of lack of maintenance supporting premises liability claim). A safety-standards claim does not fall with the TMLA just because the underlying occurrence took place in a health care facility. *See Tex. Health Presbyterian Hosp. Dallas v. Burch,* No. 05-14-00665-CV, 2015 WL 273119, at * 2 (Tex. App.—Dallas Jan. 22, 2015, no pet.) (mem. op.) ("This Court has held on numerous occasions that the mere fact that the alleged injuries occurred at a hospital is insufficient to transform a negligence claim into a health care liability claim."). In accordance with this well-settled law, we conclude that Nexion's negligence did not occur in the course of it performing a task with "the purpose of protecting patients from harm" and this factor weighs against a finding of a health care liability claim.

**ii)** *Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated?*

The evidence in this case establishes that Carolyn fell in the hallway in between her mother's room and the nurses' station. Nexion alleges although the majority of the patient medical care is performed in the patient rooms, "each patient must exit their room and travel the hallway at issue." We find this argument unpersuasive for several reasons. First, we note that the Supreme Court has provided guidance in this matter:

> We agree that floor care in an area frequented by persons seeking or receiving health care is related to the provision of health care. But as we determined in *Ross*, the Act requires that for a claim to be a [health care liability claim], it must have more of a relationship to the provision of health care than it arises from an occurrence inside a hospital.

*Reddic*, 474 S.W.3d at 675. Here, Nexion has not provided any evidence that its patients receive medical care in the hallways, they simply assert that it is enough that the patients must use the hallway. That Nexion's patients traverse the floors is not receiving health care. *See Ross*, 462 S.W.3d at 498; *Galvan*, 476 S.W.3d at 672-73; *Reddic*, 474 S.W.3d at 429; *South Place SNF, LP v. Hudson*, 606 S.W.3d 829, 832, 834 (Tex. App.—Tyler 2020, pet. denied) (visitor slipped and fell on a patient's urine from a leaky catheter bag in dining room of nursing facility not a health care liability claim); *Tex. Health Presbyterian Hosp. Dallas*, 2015 WL 273119 at *1 (visitor slipped and fell on the way to elevators in hospital not a health care liability

–8–

claim). Here, the record does not demonstrate that patients were receiving care in the hallways, nor did Nexion demonstrate that Carolyn's claim had a relationship to the provision of health care other that it arose from an occurrence inside a hospital. *Reddic*, 474 S.W.3d at 675. For this reason, this factor does not favor Nexion's position.

### iii) At the time of the injury was the claimant in the process of seeking or receiving health care?

As Nexion does not contend that Carolyn was seeking or receiving health care at the time of the accident and the alleged facts indicate she was not seeking or receiving health care, this factor weighs against a finding of a health care liability claim.

### iv) At the time of the injury was the claimant providing or assisting in providing health care?

In regard to this factor, Nexion references numerous allegations from the petition in support of its assertion that Carolyn was "providing or assisting in providing health care" including: (1) Carolyn was encouraged to be an "active participant" in her mother's care; (2) Carolyn supplied shower products, helped bathe her, brought her mother food, attended care plan meetings, did her mother's hair and other small tasks; and (3) Carolyn was encouraged to visit on holidays and special occasions because "Nexion stressed it was a benefit to the resident and the

facility that family be around at the holidays."[3] Nexion does not support these assertions with citation to any authority. Carolyn's walking through the hall to visit her mother is not the provision of health care even if Carolyn's visits and caring for her mother has general benefits to her mother. Accordingly, this factor does not favor Nexion's argument.

>    **v)**    ***Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider?***

In regard to this factor, Nexion reasserts that same arguments raised in regard to the first factor. For all the reasons addressed above, we decline to conclude that the alleged negligence in this case was based on safety standards arising from professional duties owed by the health care provider, so this factor weighs against a finding of a health care liability claim.

>    **vi)**    ***If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care?***

In their amended petition, Carolyn and David alleged that a "puddle had formed at the base of a large ice-chest cooler, which upon information and belief was designed and manufactured by Igloo" and "the cooler had been leaking for a

---

[3] In response, Carolyn submitted an affidavit stating as follows: "I was neither seeking nor providing healthcare at the time of my visit on December 24th, 2018 – I am not qualified to provide healthcare – I am not a doctor or a nurse nor am I employed by a healthcare facility." Nexion asserts in its brief that Carolyn's affidavit "is not competent evidence and should be disregarded pursuant to the sham affidavit doctrine and because it is conclusory, containing no explanation for contrary judicial admissions." Nexion asserts that the trial court erred in overruling its objection to the conclusory nature of its affidavit. As we conclude this factor against Nexion even without Carolyn's affidavit, we need not address this argument.

quite a while because of a defective gasket." The amended petition named Igloo Products Corporation as an additional defendant and asserted a product liability claim against it. In addition, Nexion submitted two affidavits of Delphia Smith, the administrator of Nexion, dated January 2, 2020 and February 26, 2020. In her affidavits, Smith stated that:

> A plastic, mobile hydration cart containing an ice cooler is used for patient hydration. The hydration cart is wheeled from patient room to patient room in order to keep the long-term residents hydrated. To my knowledge, no other 'water cooler' or 'ice chest cooler' was present on the hallway at the time of the incident. The mobile hydration cart is transported from room to room to assist in maintaining the hydration of residents of Village Creek.
>
> Exhibit A-1 is an invoice documenting the purchase of 2 mobile hydration ice carts presented for inspection on February 7, 2020. The invoice was provided by our medical equipment vendor, Direct Supply, Inc. at my request and as a result of inquiries into the purchase date. The carts are mobile and used to provide hydration for residents of the facility. As the invoice reflects, the mobile hydration ice carts were purchased in August of 2016. I am an authorized custodian of records for Village Creek.

The affidavits, however, do not state that these "mobile hydration carts" were the ones present in the hallway on December 24, 2018 when the accident occurred. Further, Nexion's response to Carolyn's discovery request for the "brand, size, make and purchase date of each water cooler that was present in the hallways of the facility on December 24, 2018" provides as follows:

> To the best of Nexion Health at Lumberton, Inc.'s knowledge, there were two mobile hydration carts in use during the specified time period that remain in use. Although Defendant makes no representation as to the manufacturer, each of the hydration carts contains an ice chest cooler marked with a "Rubbermaid" logo. The two hydration ice carts

–11–

supplied for inspection on February 7, 2020 are manufactured by IPU, Inc. and were purchased from a medical supplier on August 22, 2016.

In addition to the record failing to clearly identify which ice cooler was present on the date of the accident, the record also fails to state explain why hydration would be considered the provision of health care as opposed to a basic necessity.

Finally, we note that recent case law makes it unlikely that the ice cooler would be considered an instrumentality of health care. *See South Place SNF, LP*, 606 S.W.3d at 834. In *South Place,* a visitor met an employee in the dining room of a skilled nursing and rehabilitation facility. *Id.* at 832. When the visitor went to leave the dining room, he slipped and fell in a puddle of urine which had leaked from the catheter bag of a patient who at in the dining room at or near the time of the fall. *Id.* at 834. When examining the sixth factor, our sister court stated as follows:

> Finally, in considering the sixth *Ross* factor, South Place contends that the patient's catheter bag is an instrumentality used to provide health care, and that negligent conduct caused urine to leak on the floor. Although a catheter bag may generally be an instrumentality used to provide health care, as we earlier stated, the leaky catheter created a dangerous condition on the floor, but this is not substantially related to the active provision of medical or health care. Therefore, although an instrumentality might have been generally involved, there is no substantive nexus between the safety standards allegedly violated and the provision of health care that implicate South Place's duties as a health care provider.

*Id.* at 835 (internal citations omitted). Similarly, here the leaking ice chest created a dangerous condition but not one substantially related to an active provision of health care because there is no substantive nexus between the safety standards allegedly

–12–

violated and the provision of health care. *Id.* For this reason, the sixth factor does not favor Nexion.

> **vii)** ***Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?***

In regard to this factor, Nexion states "[t]here was no evidence submitted on this element at the trial court level and none made part of the record." Thus, this factor does not support a finding of a health care liability claim.

After consideration of all of the *Ross* factors, we conclude the claims at issue in this case are not health care liability claims. As we conclude that the trial court properly denied the motions to dismiss, we need not address Nexion's second issue regarding the alleged deficiencies of the expert report.

**B.      Texas Rule of Appellate Procedure 45**

In their brief, Carolyn and David assert that Nexion's motion to dismiss was "frivolous, time consuming and without basis" and request that this Court award just damages to them. They assert that "[a]ppellants should have known, when their legal research returned no cases that support their position and *three* Texas Supreme Court decisions based on the same fact scenario of this case, that there are no reasonable grounds to believe the ruling of the trial court would be reversed."

Texas Rule of Appellate Procedure 45 provides as follows:

> If the court of appeals determines that an appeal is frivolous, it may—
> on motion of any party or on its own initiative, after notice and a

–13–

reasonable time for response—award each prevailing party just damages.

*See* Tex. R. App. P. 45. An appeal is considered "frivolous" when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *See Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 290 (Tex. App.—Dallas 2012, no pet.). In the *Owen* case, this Court further noted:

> The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious.

*Id.* (internal citations omitted). Here, Nexion's argument, although ultimately unpersuasive, hinged on the distinction that the prior case law "turned on the absence of any evidence" while its case had some evidence in support the *Ross* factors. Although we affirm the decision of the trial court, we decline to impose sanctions as we conclude that this case does not arise to the level of "truly egregious."

## CONCLUSION

On the record of this case, we affirm the trial court's orders denying the two motions to dismiss filed by Nexion.

/David Evans/
DAVID EVANS
JUSTICE

200406F.P05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

NEXION HEALTH
MANAGEMENT, INC. AND
NEXION HEALTH AT
LUMBERTON, INC., Appellants

No. 05-20-00406-CV      V.

CAROLYN AND DAVID
WADDELL, Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-11781.
Opinion delivered by Justice Evans.
Chief Justice Burns and Justice
Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CAROLYN AND DAVID WADDELL recover their costs of this appeal from appellants NEXION HEALTH MANAGEMENT, INC. AND NEXION HEALTH AT LUMBERTON, INC.

Judgment entered December 30, 2020.