

# NUMBER 13-24-00052-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ERNEST HEALTH, INC.
D/B/A SOUTH TEXAS
REHABILITATION HOSPITAL,                                             Appellant,

v.

MARTIN CASTRO,                                                        Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Justice Benavides**

This interlocutory appeal stems from the trial court's denial of Ernest Health, Inc. d/b/a South Texas Rehabilitation Hospital (South Texas Rehab)'s motion to dismiss the claims of appellee Martin Castro. By a single issue, South Texas Rehab contends that Castro's claim constitutes a health care liability claim, and thus to avoid dismissal Castro

was required to comply with Chapter 74 of the civil practice and remedies code's expert report requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Because he did not, South Texas Rehab argues that the trial court erred by failing to grant its motion to dismiss. We reverse and remand.

## I.    BACKGROUND

On September 9, 2022, Castro filed his original petition alleging that he visited South Texas Rehab "for occupational and physical therapy due to suffering a stroke or embolism." Castro alleged that "[a]s a matter of standard [sic], any patient who has suffered such an illness or disease is to be supervised at all times when ambulating." However, Castro represented that he "was not being assisted by the employees" of South Texas Rehab when he suffered a fall in the lobby of the facility and fractured a rib.

South Texas Rehab filed its answer on June 22, 2023. Accordingly, if Castro's claim constituted a health care liability claim, he was obliged to serve South Texas Rehab with a compliant expert report by October 20, 2023. *See id.* When Castro failed to do so, South Texas Rehab filed its motion to dismiss on December 4, 2023.

On December 18, 2023, Castro filed an amended petition, in which he represented that his claim "is not a MEDICAL MALPRACTICE claim nor is it a HEALTHCARE claim." However, Castro continued to allege that "[a]s a matter of standard [sic], any patient who has suffered [a stroke or embolism] is to be supervised at all times when ambulating," and that he was not being supervised by South Texas Rehab staff at the time of the fall.

On January 9, 2024, Castro filed his second amended petition, abandoning his assertion that he should have been supervised due to his medical condition, and instead

2

solely maintained that the case was a straightforward slip-and-fall claim, as "he slipped and fell on the wet floor" in the facility's men's room. Nevertheless, he continued to assert that South Texas Rehab was negligent in training its employees and failing to warn him of the hazardous floor condition.

The trial court heard argument on the motion to dismiss on January 10, 2024, at the conclusion of which it took the matter under advisement. The trial court denied the motion on January 17, 2024, and this appeal followed. *See id.* § 51.014(9).

## II. APPLICABLE LAW & STANDARD OF REVIEW

Under the Texas Medical Liability Act (TMLA), a claimant asserting a health care liability claim must serve an expert report on the defendant health care provider within 120 days of the filing of the defendant's answer, unless the parties otherwise agree in writing to extend the deadline. *Id.* § 74.351(a). "Strict compliance with th[is] provision is mandatory." *Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013). If this "statute-of-limitations-type deadline" is not met, the court, on the motion of the defendant health care provider, must dismiss the claim with prejudice and award the health care provider reasonable attorney's fees and court costs. *Ogletree v. Matthews*, 262 S.W.3d 316, 319–20 (Tex. 2007); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

Whether a claim is a health care liability claim and thus subject to expert report requirements is a question of law that we review de novo. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). Under the definition provided in the TMLA, a health care liability claim involves three essential elements: (1) the defendant is a

3

physician or health care provider; (2) the claim is for treatment, lack of treatment, or another departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission proximately caused the claimant's injury or death. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 886 (Tex. 2023); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). In determining whether a claim is a health care liability claim, "courts are not bound by the form of the pleading." *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011). Instead, our conclusion should be drawn from the "'entire court record,' including 'pleadings, motions and responses, and relevant evidence properly admitted.'" *Faber*, 671 S.W.3d at 886 (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)). Claimants "cannot avoid the [TMLA]'s application by artfully pleading claims for ordinary negligence or premises liability." *Id.*

### III.    ANALYSIS

South Texas Rehab contends that Castro's claim of negligence was a health care liability claim, while Castro maintains that his claim is one of a straightforward slip-and-fall. All potential health care liability claims grounded in safety-standards deviations are appropriately analyzed under the multi-factor analysis laid out in *Ross. See id.* at 887 ("*Ross* applies to all safety-standard claims."); *Ross*, 462 S.W.3d at 505. The *Ross* factors require us to consider:

1.   Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.   Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider

4

to protect persons who require special, medical care was implicated;

3.  At the time of the injury was the claimant in the process of seeking or receiving health care;

4.  At the time of the injury was the claimant providing or assisting in providing health care;

5.  Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6.  If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7.  Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Ross*, 462 S.W.3d at 505. "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.*

At the time of the fall, Castro was visiting South Texas Rehab to attend a physical and occupational therapy session as a patient of the facility. Although he has subsequently departed from the assertion, Castro initially alleged that South Texas Rehab staff should have been supervising him at the time because of the heightened risk factors attendant to stroke or embolism survivors—a claim that undoubtedly implicates South Texas Rehab's duties as a health care provider. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) ("Professional supervision, monitoring, and protection of the patient population necessarily implicate the accepted standards of safety under the [TMLA], just as those duties in this case are included in the term health care.").

It was not until his second amended petition that Castro recast his claim to allege

5

that South Texas Rehab's negligence was connected to the cleanliness of its floors. The supreme court has "repeatedly explained that [we] must consider 'the underlying nature of the plaintiff's claim rather than its label' and that parties cannot alter that nature 'through artful pleading.'" *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 837 (Tex. 2022) (quoting *Weems*, 575 S.W.3d at 363). And "claims 'premised on facts that *could* support claims' that qualify as health care liability claims *are* health care liability claims, regardless of the pleading's specific allegations." *Id.* at 838 (quoting *Cerda*, 379 S.W.3d at 255). Regardless of the proper framing, we conclude that Castro has alleged a health care liability claim.

Generally speaking, "hospital standards for floor maintenance 'may also be the same standards many businesses generally have for maintaining their floors.'" *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 676 (Tex. 2015) (quoting *Ross*, 462 S.W.3d at 503). Nevertheless, if a claimant contends that the defendant's deviation from these standards was in some way related to the provision of health care, the TMLA is implicated. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). For example, in *Ollie*, the "essence of Ollie's claim center[ed] on the failure of Harris Methodist to act with a proper degree of care to furnish a dry floor, warn her of the hazards of a wet bathroom floor, or some similar failure to act." 342 S.W.3d at 527. The Supreme Court of Texas nonetheless concluded that this was a health care liability claim because it was "a safety claim directly related to services meeting her fundamental needs" as a patient, specifically, "cleanliness" and "safety." *Id.*; *see Ross*, 462 S.W.3d at 502 (discussing *Ollie* and explaining that "[a]lthough the claims . . . alleged general negligence, they were

6

[health care liability claims] because the underlying nature of the claims involved violations of safety standards directly related to the provision of health care, including protecting patients").

Similarly, in *Christus Spohn Health System Corp. v. Goodhew*, the appellee fell in a hospital restroom but maintained that her claim was not a health care liability claim "because she had not yet been seen by the doctor, walked to the restroom without nurse assistance, and used a common restroom open to the public." No. 13-14-00322-CV, 2015 WL 1284672, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 19, 2015, pet. denied) (mem. op.). We nonetheless held that, because the appellee arrived at the facility for the "purpose of receiving medical treatment," and because "providing [safe] access to the restroom" is an act that may be connected to a patient's safety during their treatment, appellee's claim was a health care liability claim. *Id.* at *3.

Castro's claim cannot escape the same treatment here. As Castro was its patient, the facility's duty to protect him and provide him with safe access to the restroom also implicates its duties as a health care provider. *See id.*; *Ollie*, 342 S.W.3d at 527. Accordingly, we conclude that Castro's claim meets the definition of a health care liability claim under the TMLA, and thus the trial court erred by not granting South Texas Rehab's motion to dismiss. We sustain the sole issue presented.

## IV. CONCLUSION

We reverse the trial court's judgment and remand for the trial court to enter a judgment that: (1) awards South Texas Rehab its reasonable attorney's fees and costs of court; and (2) dismisses Castro's claim with prejudice. *See* TEX. CIV. PRAC. & REM.

7

CODE ANN. § 74.351(b).

                                                              GINA M. BENAVIDES
                                                              Justice

Delivered and filed on the
7th day of November, 2024.