**Opinion issued June 15, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00572-CV

———————————

**CITY OF ALVIN, Appellant**

**V.**

**EDNA FIELDS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 21-CV-1732**

---

## MEMORANDUM OPINION

Edna Fields sued the City of Alvin after the ambulance in which she was being transported collided with a pickup truck in an intersection. The trial court denied the City's plea to the jurisdiction and motion to dismiss under the Texas

Medical Liability Act. In this interlocutory appeal, the City of Alvin challenges both orders.

We conclude that the City had actual notice of Fields's claim, and we affirm the trial court's denial of the plea to the jurisdiction. We also conclude that Fields's claim was a health care liability claim, for which she failed to serve an expert report. We therefore reverse the trial court's order denying the motion to dismiss, and we remand this case to the trial court for determination of attorney's fees and entry of judgment.

**Background**

On October 28, 2019, Edna Fields called 911 after she experienced a headache and weakness in her left arm two weeks after having suffered an intracranial bleed. Emergency medical technicians (EMTs) Beverly Scott and William Danley responded. Danley determined that Fields was probably experiencing a stroke, which he referred to as a "neuro." The EMS Patient Care Record states: "PT on scene stroke scale was positive. PT is at this time determined urgent." As the EMT providing direct patient care, Danley determined that they should transport her to the hospital using "emergency traffic" protocol with lights and sirens. Fields was strapped into a gurney, where she sat upright, while Danley, who was not restrained, continued to provide medical care. As the ambulance approached an intersection at about 65 miles per hour, which was about ten miles

per hour over the posted speed limit, the green light turned to yellow. Scott, who was driving the ambulance, decided to continue into the intersection to avoid injuring Danley, who was unrestrained, by suddenly stopping the ambulance.

The ambulance entered the intersection against a now-red light, with lights, sirens, a rumbler, and air horn activated to warn nearby vehicles to yield the right of way. A pickup truck entered the intersection on a green light and collided with the ambulance. Scott pulled over and checked on Danley and Fields before checking on the passengers in the pickup truck, who denied injury.[1]

The Friendswood Police Department responded to the accident, and the investigating officer ticketed Scott for disregarding a red light and the driver of the pickup truck for failing to yield the right of way to an emergency vehicle. The investigating officer's narrative stated: "No injuries occurred due to this incident." The City of Alvin EMS Patient Care Record, which was signed by both Scott and Danley, elaborated: "In route . . . this ambulance had a crash involving a second vehicle as it was proceeding through a[n] intersection. [Fields] was immediately asked if she was ok. [Fields] agreed no changes but maybe her headache got a bit worse."

Alvin EMS assistant director, Deanna Bray, and Alvin EMS supervisor, Mike Monnat, both came to the scene of the collision. Scott gave a statement to the

---

[1] Shortly after the collision, another ambulance transported Fields to the hospital.

3

police, and the police officer issued her a citation. Bray then took Scott for drug and alcohol testing. In her deposition, Scott testified that she was "taken off shift until the results came back" indicating that she was not under the influence of drugs or alcohol. Scott said that she was able to return to work the same day because the test results came back quickly. After the drug test, Bray reminded Scott to complete an incident report, which Scott said was "standard procedure for any incident" and simply required her to "tell what occurred." In her incident report, Scott wrote: "My partner and the patient we were transporting denied injuries." Danley also wrote an incident report. In his incident report, he wrote, "I immediately asked if pt was ok and she said her head hurts a bit more from the 'whiplash.'"

Scott testified by deposition that she was not reprimanded after the incident. When asked if she would do anything differently if she could "go back," Scott said:

> No, not at that point. Because when you've got somebody that time is of the essence, then, you maybe would take a little bit–be a little bit more aggressive on your movement, you know. So, would I change anything; no. I mean, I had to think about her, too, you know, getting her to the hospital. . . . [A]t that time she had said that she was having–had been having symptoms for an hour or so, or however long. And so, the time it takes, you know, when you delay, the outcome is not as good. So, in my mind, when he called the neuro, I wanted to get her to the hospital as quick as I could so that they could do what they do. Get her into CAT scan. If she was having an ischemic stroke, that would be a clot, they could TPA her; but they only have a certain amount of time. If it's a bleed, which she had a

4

history of bleeds, it would have been a different kind of procedure. So, everything was based on time. So, with the scenario that you give me and how that occurred, I would not have changed anything going forward. It's all about—it is about myself and my partner, but it's about getting the patient to definitive care as fast as you can and as quick and as safe . . . .

Nearly two years after the collision, on October 1, 2021, Fields filed suit against the City of Alvin and the driver of the pickup truck. In her original petition, Fields alleged that the City "had actual notice of the incident made the basis of this lawsuit and the injuries suffered by Plaintiff." The City answered, asserting governmental immunity. The City later filed a plea to the jurisdiction, asserting that Fields failed to give the City notice of her claim within six months as required by statute, and that the City did not have actual knowledge of her claim. The City supported its plea to the jurisdiction with the following evidence: (1) the City of Alvin EMS Patient Care Record; (2) a certified copy of the Texas Peace Officer's Crash Report, which was filed with the Texas Department of Public Safety; (3) the transcript of the ambulance driver's deposition; (4) excerpts from Fields's deposition; (5) Fields's original petition; (6) an affidavit from a City of Alvin legal department employee who averred that Fields did not file notice of a claim for personal injuries in the six months after the collision, along with a copy of the third-party claim submitted to the City by the driver of the pickup truck.

Fields responded, attaching as jurisdictional evidence the following documents, some of which were identical to the evidence offered by the City:

5

(1) the City of Alvin EMS Patient Care Record; (2) the transcript of the ambulance driver's deposition; (3) a certified copy of the Texas Peace Officer's Crash Report; (4) the written statement from the ambulance driver; and (5) the written statement from the attending EMT.[2]

The City also filed a motion to dismiss under the Texas Medical Liability Act (TMLA), asserting that Fields's claim was a health care liability claim subject to the statute's expert report requirements. The City maintained that the claim arose from an alleged breach of safety standards. Fields responded that her claim was not a health care liability claim, reasoning that expert medical or health care testimony was not needed to support her case because her claims arose from ordinary negligence.

The trial court signed an order denying the plea to the jurisdiction and the motion to dismiss under the TMLA. The City of Alvin appealed from the combined interlocutory order.[3]

---

[2]   In the response, Fields asserted that she had also attached as evidence the City's response to a request for disclosure. No such document is in the appellate record.

[3]   *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (providing jurisdiction over interlocutory appeal from order denying plea to jurisdiction by governmental unit); *id.* § 51.014(a)(8) (providing jurisdiction over interlocutory appeal from order denying health care provider's motion to dismiss for failure to file expert report); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction.").

**Analysis**

On appeal, the City argues that the trial court erred by denying its plea to the jurisdiction because Fields did not provide formal notice of her claim and the City lacked actual knowledge of her personal injury claim. In the alternative, the City argues that even if the court had jurisdiction, it nevertheless erred by denying the motion to dismiss under the TMLA because Fields's claim is a health care liability claim as a departure from safety standards, and Fields did not file an expert report.

I.     **Fields's jurisdictional evidence creates a question of fact on actual notice that defeats the City's plea to the jurisdiction.**

A.     **Plea to the jurisdiction**

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction, which we review de novo. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). A plea to the jurisdiction may also challenge the existence of jurisdictional facts or implicate the merits of the plaintiff's cause of action. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). Because a plea to the jurisdiction is a

dilatory plea, a plaintiff is not required "to put on [her] case simply to establish jurisdiction." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

When a plea to the jurisdiction challenges jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion." *Mission Consol.*, 372 S.W.3d at 635. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 226. If the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *see also Mission Consol.*, 372 S.W.3d at 635. But if the evidence raises a fact issue about jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Id.* Thus, to avoid dismissal, a plaintiff must establish the existence of a genuine question of material fact on the jurisdictional issue. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771.

**B.      Governmental immunity**

Governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature.[4] *See Mission Consol.*, 372 S.W.3d at 636.

---

[4]      "We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("*Mission Consol. I*") (citing TEX. GOV'T CODE § 311.034). We initially focus exclusively on the statute permitting a party to sue the state, without regard to evidence of injury or the need

The Legislature has waived governmental immunity for certain tort claims through the Texas Tort Claims Act, so long as the claimant promptly notifies the governmental entity of his claim. *See Reyes v. Jefferson Cnty.*, 601 S.W.3d 795, 797 (Tex. 2020) (citing TEX. CIV. PRAC. & REM. CODE § 101.101(a)); *see also City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (citing TEX. CIV. PRAC. & REM. CODE § 101.021). The TTCA requires claimants to provide notice of a claim to the governmental entity no later than six months after the date of the incident giving rise to the claim and to comply with notice requirements found in city charters and ordinances.[5] TEX. CIV. PRAC. & REM. CODE § 101.101(a), (b); *Reyes*,

---

for a party to have a remedy for a violation of his rights. *See id.* The Legislature has expressly waived immunity to the extent provided by the Texas Tort Claims Act. *See id.*; *see* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109 (TTCA). As relevant to this appeal, the TTCA generally waives immunity for "personal injury, proximately caused by an employee's negligence, that 'arises from the operation or use of a motor-driven vehicle,' if the employee would be personally liable under Texas law.'" *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 (Tex. 2022) (quoting TEX. CIV. PRAC. & REM. CODE § 101.021(1)). The parties do not dispute the applicability of this provision.

[5] "Claimants must also comply with any time requirements for notice that a city has adopted by charter or ordinance." *City of Houston v. Musyimi*, No. 01-21-00670-CV, 2022 WL 2919724, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.); *see* TEX. CIV. PRAC. & REM. CODE § 101.101(b) (ratifying and approving provisions requiring notice in city's charter and ordinances). Article XI, Section 4 of the City of Alvin Charter requires a tort claimant to provide written notice to the City Manager or City Secretary within 90 days after the date of the alleged injury. *See* Alvin, Tex., Charter, art. XI, § 4. The notice must "state specifically . . . when, where and how the injury or damage was sustained, setting forth the extent of the injury . . . as accurately as possible, and giving the names of address of all witnesses known to the claimant upon whose testimony the claimant is relying to establish the injury . . . ." *Id.* The City's charter does not expressly provide an exception to the notice requirement in the case of actual notice, *see id.*,

601 S.W.3d at 797–98; *City of Houston v. Musyimi*, No. 01-21-00670-CV, 2022 WL 2919724, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.). The Supreme Court of Texas has explained that although the TTCA does not expressly state the purpose of the notice requirement, such prompt notice allows a governmental entity to remediate potential dangers and to investigate claims. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 59, 64 (Tex. 2019). Statutory notice is a jurisdictional prerequisite to suit, unless the governmental entity has "actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE § 101.101; *see Worsdale*, 578 S.W.3d at 59.

"A governmental unit has actual notice under the TTCA if it has *subjective* knowledge of (1) a death, injury, or property damage; (2) the governmental unit's fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved." *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018) (emphasis added). "Whether a governmental unit has actual notice is a fact question when the evidence is disputed, but it is a question of law when the evidence is undisputed." *Id.* at 776.

---

but on appeal, the City has not argued that its immunity was not waived because Fields failed to comply with the charter.

## C. Actual notice

Actual notice requires more than mere knowledge that an incident has occurred. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Musyimi*, 2022 WL 2919724, at *5 ("[A] governmental unit's awareness of an accident, without more, is not sufficient to show that it had subjective knowledge of personal injuries sustained in the accident."). Actual notice may however be imputed to the governmental unit by an agent or representative of the entity charged with a duty to investigate the facts and report them to a person of sufficient authority. *Duncan v. City of Houston*, No. 01-05-00079-CV, 2006 WL 181399, at *3 (Tex. App.—Houston [1st Dist.] Jan. 26, 2006, pet. denied) (mem. op.); *Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). Actual notice is not limited to a particular government official or employee, such as a director of risk management or hospital administrator. *Duncan*, 2006 WL 181399, at *3; *Dinh*, 896 S.W.2d at 253.

A health care provider or hospital employee may have a duty to gather facts and investigate incidents. *E.g.*, *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Est. of Arancibia*, 324 S.W.3d 544, 549 (Tex. 2010) (holding that governmental defendant had actual notice when defendant hospital's contemporaneous investigation showed that care provided to plaintiff's decedent was inconsistent with established standards); *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d

11

335, 340–41 (Tex. App.—San Antonio 2010, no pet.) (holding that actual notice was imputed where pediatrics-residency-program director conducted faculty review of incident involving resident's alleged medical error as required by contract between residency program and hospital); *Johnson v. Nacogdoches Cnty. Hosp. Dist.*, 109 S.W.3d 532, 537 (Tex. App.—Tyler 2001, pet. denied) (holding that hospital director's awareness that emergency room's failure to treat decedent created potential for liability raised fact question about whether hospital had actual notice). *But see Univ. of N. Tex. Health Sci. Ctr. v. Jimenez*, No. 02-16-00368-CV, 2017 WL 3298396, at *5 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.) ("[N]ot all government-hospital employees—even treating physicians—hold positions from which their own knowledge will be imputed to the entity. Caselaw most often highlights the doctor's particular role: a government doctor who has oversight responsibilities tends to have his or her knowledge treated as tantamount to that of the entity itself."). Likewise, while hospital records alone are not sufficient to show actual notice, hospital records may create a question of fact about the defendant's actual knowledge. *Dinh*, 896 S.W.2d at 253 (holding that medical records showing patient's deterioration over eight-hour delay in administering blood as ordered by physician raised fact question about defendant hospital's actual notice).

**D.** **The evidence raises a question of fact about whether the City of Alvin had actual notice.**

In this case, the City of Alvin had more than mere notice that the accident occurred. Our standard of review requires us to take as true all evidence favorable to Fields and to indulge every reasonable inference and resolve any doubts in her favor. *See Miranda*, 133 S.W.3d at 226. Some of the jurisdictional evidence is undisputed. Fields did not provide formal notice of her claim to the City. Scott acknowledged, and the police report reflected, that she received a citation for disregarding a red light. Scott also acknowledged that she was driving approximately ten miles more than the posted speed limit. Two of Scott's supervisors–Deanna Bray and Mike Monnat–came to the scene of the collision. Scott testified by deposition that she was removed from her shift until the results of her drug and alcohol test returned a negative result later that day.

Scott also testified that it was her supervisor and Alvin EMS assistant director Bray who took her to get tested for drugs and alcohol. We can reasonably infer from this that Bray was an employee and agent of the City of Alvin and that she had a duty to investigate the facts–at least some of the facts–of the incident. *See Duncan*, 2006 WL 181399, at *3. We can also reasonably infer from this that the City therefore had actual knowledge that it was or could be responsible for the collision.

Scott testified that Alvin EMS procedure–and directions from Bray–required her and her partner, Danley, to write incident reports. We can reasonably infer that Bray's duty to investigate extended to reading the incident reports that she expected to be submitted according to a policy she was enforcing. Although Scott's incident report, as well as the police report, indicated that neither Danley nor Fields were injured because of the collision, Danley's report stated otherwise. Danley's incident report states that Fields told him her head hurt more "from the 'whiplash.'"

In her deposition, Fields testified that the collision jolted her "side, back, and neck" sideways, causing her neck to come off the gurney and the straps securing her to loosen. Whiplash is defined as "a neck injury caused by a sudden jerking backward, forward, or both, of the head." *Whiplash*, Dictionary.com, https://www.dictionary.com/browse/whiplash (last visited Feb. 14, 2023) (providing example, "*Whiplash resulted when their car was struck from behind.*"). Because the term "whiplash" connotes an injury sustained by a person involved in a motor vehicle accident, we can reasonably infer that Danley's incident report referencing Fields's statement about "whiplash" gave the City actual notice that Fields claimed an injury different from the symptoms she experienced before the collision.

Considering the evidence in a light favorable to Fields, and indulging reasonable inferences in her favor, we conclude that there exists a question of fact about actual notice based on the conflict between Danley's incident report, mentioning "whiplash," and Scott's incident report and the police report, both of which stated that Fields was not injured in the collision. We conclude that there is a genuine question of material fact on the jurisdictional issue, and we hold that the trial court did not err by denying the City's plea to the jurisdiction.

We overrule the City's first issue.

## II. Fields's claim is a health care liability claim, which the trial court should have dismissed for failure to file an expert report.

In its second issue, the City argues that the trial court erred by denying its motion to dismiss under the TMLA because Fields's claim is a health care liability claim and she failed to serve an expert report as required by statute. The City argues that this is a health care liability claim because Fields's alleged injuries occurred while in transit on an ambulance and while she was receiving care. The City further argues that the alleged negligence–which the City identifies as several traffic violations–was based on safety standards for professional duties owed by the driver of the ambulance. Fields responds that her claim arises from ordinary negligence, that there was no emergency occurring that required emergency transport, and that no expert testimony is needed to prove her claim of negligence.

15

We review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). "Whether a pleading asserts a health care liability claim presents a question of law courts review de novo." *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 836 (Tex. 2022) (citing *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019)). To determine whether a pleading asserts a health care liability claim, "we must consider the 'entire court record,' including 'the pleadings, motions and responses, and relevant evidence properly admitted.'" *Lake Jackson Med. Spa*, 640 S.W.3d at 836 (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)). The party moving for dismissal bears the burden to prove that the cause of action is a health care liability claim. *See Reddy v. Veedell*, 509 S.W.3d 435, 438 (Tex. App.— Houston [1st Dist.] 2014, pet. denied) (per curiam).

A health care liability claim consists of three elements: (1) the claim must be asserted against a doctor or health care provider; (2) it must pertain to "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," and (3) the alleged departure must proximately cause injury or death to the claimant. TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). A plaintiff asserting a health care liability claim generally must serve an expert report

addressing standards of care, breach, and causation. *Id.* § 74.351(a), (r)(6). If the plaintiff does not timely serve the expert report, then the court must grant a defendant health care provider's motion to dismiss and award reasonable attorney's fees and court costs. *Id.* § 74.351(b). If the record does not affirmatively show that the plaintiff's claims are health care liability claims, the statutory expert-report requirements do not apply. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015).

Claims alleging a departure from accepted standards of safety are governed by the framework announced in *Ross*. *Id.* For such a claim to be considered a health care liability claim, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504; *see Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 664 (Tex. 2020) (stating that "alleged departures from safety standards must have a nexus to health care"). The "pivotal" inquiry in such a case is "whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Ross*, 462 S.W.3d at 505. Seven nonexclusive factors inform this analysis:

1.    Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.    Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the

17

provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*

The analysis under these factors, especially the seventh, may involve comparing the allegedly negligent acts or omissions to potentially relevant government regulations. *See, e.g.*, *PHCC—La Hacienda Rehab. & Health Care Ctr. LLC v. Crume*, 492 S.W.3d 797, 801 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A claim alleging the departure from standards of safety does not come within the TMLA's provisions "just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both." *Ross*, 462 S.W.3d at 503.

In this case, Fields has asserted a claim against the City based on the actions of its employees, who are EMTs. Under the statute, the City is a "health care

18

provider." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A)(vii) (including "health care institution" as "health care provider"); *id.* §74.001(a)(11)(C) (including "an emergency medical services provider" as "health care institution"). Fields also alleged that Scott's negligence proximately caused her injury. Thus, the first and third elements of a health care liability claim are satisfied.

The City asserts that the second element is satisfied because Fields's claim pertains to a claimed departure from accepted standards of safety. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Several of the *Ross* factors weigh in favor of a conclusion that Fields's claim is a health care liability claim. Fields's alleged injury occurred while she was in an ambulance receiving care for a probable stroke. The ambulance was traveling with lights and sirens according to its emergency protocol. The first, second, third, and sixth *Ross* factors weigh in favor of concluding that her claim was a health care liability claim. Moreover, there exists a more fundamental nexus between the alleged claim and the provision of health care. Scott testified that she entered the intersection against the red light to protect her partner, who was unrestrained because he was providing emergent health care to Fields. She also said that she was considering herself, her partner, her patient, and everyone in the vicinity "while running emergency traffic." We conclude that the claim that Fields pleaded has a nexus between the alleged negligence and the provision of health care, and we hold that Fields's claim is a

19

health care liability claim. *Ross*, 462 S.W.3d at 504; *see Coming Attractions Bridal & Formal*, 595 S.W.3d at 664

It is undisputed that Fields did not timely serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b). We therefore hold that the trial court erred by denying the City's motion to dismiss. We sustain the City's second issue.

**Conclusion**

We sustain the trial court's order to the extent that it denied the City's plea to the jurisdiction, and we reverse the order to the extent that it denied the City's motion to dismiss. We remand this case to the trial court for a determination of reasonable attorney's fees and court costs and entry of judgment dismissing Fields's claim against the City.

Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.